UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES BELCHER,

                    Petitioner,

v.                                          Case No. 3:07-cv-665-J-34JBT

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,

                    Respondent.
_____

**<u>ORDER</u>**

**<u>I. Status</u>**

Petitioner James Belcher, who is represented by counsel, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) and Memorandum of Law in Support of the Petition (Memorandum of Law) (Doc. #2) pursuant to 28 U.S.C. § 2254 on July 20, 2007.  Petitioner challenges a 2001 state court (Duval County, Florida) judgment of conviction for first degree murder and sexual battery.  Respondent has submitted a memorandum in opposition to the Petition, <u>see</u> Respondent's Answer to Petition for Writ of Habeas Corpus (Response) (Doc. #13),[1] and Petitioner submitted a brief in reply on May 1, 2008, <u>see</u> Petitioner's Reply

_____

[1] The Court will refer to Respondent's exhibits as "Resp. Ex."

to Respondent's Answer to Petition for Writ of Habeas Corpus (Reply) (Doc. #16).  This case is ripe for review.

## II. State Court Procedural History

On February 25, 1999, James Belcher was charged in Duval County, Florida, with first degree murder and sexual battery. Resp. Ex. A at 14-15, Indictment.  The Supreme Court of Florida, on direct appeal, set forth the facts of the crimes as well as bases for the trial court's findings of three statutory aggravators and fifteen  nonstatutory mitigating factors.

> The evidence presented at trial indicated that some time after 10:30 p.m. on January 8, 1996, but before 9 p.m. on January 9, 1996, James Belcher (Belcher) gained access to the victim's townhouse, where she lived alone.[FN1] Belcher sexually battered victim Jennifer Embry (Embry) and then killed her by placing his hands around her neck and holding her head under water in the bathtub until she could no longer breathe.  At 2 a.m. on January 9, 1996, Maxine Phillips, Embry's next door neighbor, was awakened by loud noises, which came from the common wall she shared with Embry. Phillips described the noises as three hard knocks, as if someone was knocking against the wall.

> FN1.  No signs of forced entry were found at Embry's home.  Embry's neighbor, Anna Alford, testified that she saw Embry come home alone at 10:30 p.m. on January 8, 1996. Ricky Embry, the victim's brother, testified that after Embry missed school and work on January 9, 1996, he went to her home around 9 p.m. to check on her.  As he placed his key into the lock, the door "just came open."  Ricky found Embry's body in the bathtub.

Medical Examiner Bonifacio Floro testified that the cause of Embry's death was both manual strangulation and drowning. White foam, a product of the mixture of air, water, and mucous in the trachea and bronchial tree, was discovered coming out of Embry's nose and mouth, which indicated to the medical examiner that she was alive and breathing when her head was submerged in the water. Linear bruising on Embry's neck and small internal hemorrhaging on her larynx and hyoid bone were consistent with her being manually strangled while she was still alive. Dr. Floro testified that Embry suffered from the following nonfatal injuries before her death: vaginal injuries consistent with forcible entry by a penis or object; a bruise above the right eyebrow; and a laceration to the right shoulder. He stated that the injuries were "fresh," indicating that they had been inflicted within twenty-four hours of Embry's death. Dr. Floro found spermatozoa in Embry's vagina and opined that they were "fresh" due to the fact that they still had both heads and tails at the time of the autopsy. Dr. Floro stated that although he could not pinpoint the time of the placement of the sperm, he opined that the condition of the sperm indicated that they had been placed there probably during a sexual act some time between three and six days before the autopsy.FN2

> FN2. Dr. Floro explained that sperm can survive longer in a dead body than a living body. He performed Embry's autopsy on January 10, 1996.

Detective Robert Hinson, the lead detective assigned to the case, testified that in the bathroom where Embry's body was found, there were some things apparently out of place. He related the following observations of the bathroom: one of the two parallel shower curtain rods was askew and had been propped up against the wall with a towel; one of the two shower curtains was pulled over to one side of the rod; the plastic hook that held up the decorative shower curtain was

3

missing from the wall and found in the
bathroom trash can with a piece of wall board
still attached; and a strip from the plastic
shower curtain liner was found in the bottom
of the bathtub.

At the time of the murder, Belcher lived
with his sister in a house that was close to
the Florida Technical College, where Embry had
attended classes until her death.  Belcher had
twice been observed at Florida Technical
College in connection with Embry.  Elaine
Rowe, an employee at Florida Technical
College, testified that in the winter of 1995,
a man came into Rowe's office and asked for
Embry by name, requesting that Embry be
retrieved from her class. Rowe had someone
retrieve Embry from her class and testified
that to her knowledge, the man and Embry
interacted that day. From a police photo-
lineup, Rowe identified Belcher as the man who
came to her office, and she identified Belcher
in court. Derrick Scott, a classmate of
Embry's with whom she had a five-month affair,
testified that one day before October of 1995,
he walked out of class at Florida Technical
College, and observed a man standing by
Embry's car, talking with her. Scott
identified Belcher from a side-shot photo,
displaying a facial scar, as the man he saw
talking with Embry by her car. Scott also
identified Belcher in court.

On August 4, 1998, Detective Hinson
questioned Belcher about Embry's murder.
During that interview, Belcher denied (1) ever
being at Embry's home, (2) ever having sex
with Embry, and (3) ever meeting Embry. After
Derrick Scott identified Belcher from a photo,
Detective Hinson obtained a search warrant for
a sample of Belcher's blood.  At the time of
the blood draw, Hinson observed that Belcher
was nervous and holding a Bible, and that he
had urinated on himself.

James Pollack, lab analyst for the
Florida Department of Law Enforcement (FDLE),
testified that the semen discovered in Embry's

4

vagina and on a bedroom slipper found in the bathroom near her body contained DNA matching Belcher's DNA profile.

The jury found Belcher guilty of first-degree murder on the theory of both premeditation and felony murder, and guilty of sexual battery. After a penalty phase hearing, the jury voted nine to three, in favor of a death sentence. The trial court followed the jury's recommendation and imposed a death sentence for first-degree murder and sentenced Belcher to twenty-five years imprisonment for sexual battery.  The trial court found that the State proved beyond a reasonable doubt the following aggravators in support of Belcher's death sentence:  (1) the defendant has been previously convicted of a felony involving the use or threat of violence to some person (great weight); (2) the capital felony was committed while the defendant was engaged in the commission of the crime of sexual battery (great weight); and (3) the capital felony was especially heinous, atrocious, or cruel (HAC)[2] (great weight). The trial court found that all of the mitigating factors that were presented were proven sufficiently for the Court to give them consideration.  The mitigating factors in this case, all of which

---

[2] The trial judge instructed the jury on the meaning of "heinous, atrocious or cruel":

Heinous means extremely wicked or shockingly evil.  Atrocious means outrageously wicked and vile.  Cruel means designed to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others.  The kind of crime intended to be included as heinous, atrocious or cruel is one accompanied by additional acts that show that the crime was conscienceless or pitiless and was unnecessarily torturous to the victim.

Resp. Ex. S at 1830 (designated paragraphs omitted).

were nonstatutory, were: (1) in his relationship with family members, Belcher is considerate, generous and concerned; (2) Belcher loves his parents, brother, sisters, cousins, aunts, and uncles, and they love him; (3) Belcher has not lured anyone else in his family into trouble with the law, he has actually discouraged family members from engaging in criminal behavior and used himself as an example as to why they should not get involved in criminal activity; (4) Belcher has done many kind things for his family; (5) in spite of personal problems, Belcher has encouraged his cousins to do well; (6) Belcher has often been a mentor and a role model of integrity to his relatives; (7) Belcher has maintained contact with relatives even while in prison and continues to provide them advice and counsel, sometimes over the phone; (8) Belcher was raised in a high crime area in New York and was evidently unable to resist the temptations of crime; (9) Belcher was sent to adult prison at an early age and it affected his development; (10) Belcher has never abused alcohol or drugs; (11) Belcher has shown concern for younger inmates at Appalachee Correctional Institute (ACI) and has had a positive effect on their lives by being a tutor, basketball coach, a good listener, a counselor to young inmates, and a peacemaker; (12) Belcher can continue to help other inmates in the future, as evidenced by those who testified at the penalty phase; (13) Belcher has not been a discipline problem either in prison or in the pretrial detention facility for the period of his recent incarceration; (14) Belcher displayed proper behavior during trial; and (15) Belcher displayed appropriate remorse and genuine concern for the distress caused to his family and the victim's family during the Spencer FN3 hearing. The sentencing order indicates that the trial court assigned "some weight" to all of the mitigators, except for (11) and (12), to which it assigned "greater weight."

FN3.   See Spencer v. State, 615 So.2d 688 (Fla. 1993).

<u>Belcher v. State</u>, 851 So.2d 678, 679-82 (Fla. 2003) (per curiam) (footnotes included).

On direct appeal, Belcher raised the following four issues: (1) the trial court erred in allowing the testimony of the victim of a prior violent felony, introduced to establish the facts of that offense, to be used in the prosecutor's argument to the jury to suggest the existence of another aggravating circumstance which was not in issue in the case since the State had not asserted it and could not prove it; (2) the trial court erred in instructing the jury and by finding that the homicide was especially heinous, atrocious and cruel (HAC); (3) the trial court erred in refusing to instruct the jury on specific, nonstatutory mitigating circumstances, as the defense requested; and (4) Florida's capital sentencing scheme is unconstitutional because it does not require aggravating circumstances to be charged in the indictment, does not require specific, unanimous jury findings of aggravating circumstances and does not require a unanimous verdict to return a recommendation of death. Resp. Ex. W. The State filed an Answer Brief, Resp. Ex. X, and Petitioner filed a Reply Brief, Resp. Ex. Y. On July 10, 2003, the Supreme Court of Florida affirmed Belcher's convictions for first degree murder and sexual battery and the death sentence. <u>See</u> <u>Belcher</u>, 851 So.2d at 679, 686. Additionally, the Court addressed the proportionality of the death sentence in Belcher's case and whether there was sufficient

evidence to support Belcher's conviction for first degree murder. Id. at 682, 685-86.  The mandate was issued on August 7, 2003.[3]

Belcher filed a petition for writ of certiorari in the Supreme Court of the United States, raising one issue: whether the Supreme Court of Florida correctly concluded that Ring v. Arizona, 536 U.S. 584 (2002), is not applicable to Florida's death penalty sentencing scheme.  Resp. Ex. AA.  The State filed a brief in opposition. Resp. Ex. BB.  The Supreme Court of the United States denied certiorari on December 1, 2003.  Belcher v. Florida, 540 U.S. 1054 (2003); Resp. Ex. CC.

On November 12, 2004, Belcher, through counsel, filed a motion for post conviction relief pursuant to Fla. R. Crim. P. 3.851 (3.851 motion).  In the 3.851 motion, Belcher raised fourteen claims,[4] most of which concerned the alleged ineffectiveness of his defense attorneys:  Assistant Public Defenders Alan Chipperfield and Lewis H. Buzzell, III.  Specifically, Belcher set forth the following ineffective assistance claims: (1) counsel failed to request a curative instruction and object to the prosecutor's voir dire comments, which included misstatements of the State's burden of proof and the Defendant's presumption of innocence; (2) counsel allowed the prosecutor's comments denigrating the role of the jury;

---

[3] See http://jweb.flcourts.org (James Belcher v. State of Florida, Case No. SC01-1414).

[4] The 3.851 motion omitted a thirteenth claim, and claim fifteen preceded claim fourteen.  See Resp. Ex. DD at 28-29.

(3) counsel failed to request a curative instruction and object to the prosecutor's voir dire comment, which failed to distinguish the defense's lesser burden of proof to establish mitigating circumstances; (4) counsel failed to request a curative instruction and object to the prosecutor's voir dire comment, indicating that the Defendant has the burden of proving that mitigating circumstances must outweigh the aggravating circumstances, rather than vice-versa; (5) counsel failed to request a curative instruction and object to the State's comments, indicating that a killing done instantly after deciding to kill is premeditated, first degree murder; (6) counsel failed to request a curative instruction and object to the prosecutor's voir dire comment that suggested that the State does not have to prove intent for first degree, premeditated murder; (7) counsel improperly conceded that the victim suffered a sexual battery, the predicate offense needed for a felony first degree murder conviction in the subject case; (8) counsel allowed impermissible appeals to the emotions and sympathy of the jurors; (9) counsel failed to use a defense gynecologist to counter the State's expert's opinions that the physical evidence proved a forcible, sexual battery; (10) counsel failed to object to nonstatutory aggravating circumstances about the nutritious food, diversions, risk of escape, and additional taxpayer legal expenses incurred in prison; and (11) counsel failed to call certain witnesses to testify during the penalty phase.

9

Resp. Ex. DD; see Belcher v. State, 961 So.2d 239, 244 n.3 (Fla. 2007) (per curiam) (listing the fourteen 3.851 claims).  Belcher also alleged, as ground twelve, that Ring, 536 U.S. 584, Schriro v. Summerlin, 542 U.S. 348 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000), require that the aggravating circumstances be charged in the Indictment, that the aggravating circumstances be found by the jury and that the jury's death recommendation be unanimous; as ground thirteen, that the State's failure to disclose the mishandling of DNA-related items at crime laboratories violated Brady v. Maryland, 373 U.S. 83 (1963); and that defense counsel was ineffective because they committed cumulative errors (ground fourteen).  Resp. Ex. DD; see Belcher, 961 So.2d at 244 n.3.  The State filed a response.  Resp. Exs. EE; FF.

The Honorable Peter Dearing (Judge in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida), who presided at the guilt and penalty phases of the trial, also presided at the 3.851 post conviction proceedings.  Following a Huff[5] hearing on January 24, 2005, the trial court determined that an evidentiary hearing was necessary on nine of the claims: one, three, five, seven, nine, ten, eleven, thirteen and fourteen.  See

---

[5] Huff v. State, 622 So.2d 982 (Fla. 1993) (concluding that, in a death penalty post conviction case, the judge must allow the attorneys an opportunity to appear before the court and be heard on the motion for post conviction relief to determine whether an evidentiary hearing is required and to hear legal argument relating to the motion).

Belcher, 961 So.2d at 245 n.5 (setting forth the claims presented at the evidentiary hearing).

On April 27, 2005, and May 6, 2005, the trial court held an evidentiary hearing. Resp. Ex. GG, Transcript of the Evidentiary Hearing (EH Tr.).[6] Belcher abandoned the Brady claim (ground thirteen) at the evidentiary hearing. In a written order, the trial court denied the motion for post conviction relief on August 25, 2005. Resp. Ex. HH.

On appeal to the Supreme Court of Florida, Belcher raised the twelve claims of ineffectiveness of trial counsel that were denied by the trial court. Resp. Ex. II. The State filed a brief in opposition. Resp. Ex. JJ. Belcher also filed a petition for writ of habeas corpus, raising five claims. As the first claim, Belcher argued that his death sentence, which was imposed pursuant to a non-unanimous death recommendation, is not lawful under Apprendi and Ring. Further, he claimed that appellate counsel provided ineffective assistance because counsel failed to raise the following issues on direct appeal: (1) the trial court's decision to admit various photographs of the victim and publish those photographs to the jury; (2)(a) the trial court's denial of his motion for judgment of acquittal as to the sexual battery and first degree murder counts, and (b) the trial court's denial of his

---

[6] This Court will cite to the page number in the lower right-hand corner of the page.

request for a special jury instruction on the circumstantial evidence rule; (3) the trial court's denial of a motion for mistrial based on the prosecutor's comments on Petitioner's exercise of his right to remain silent; and (4) the prosecutor's presentation and the trial court's allowance of victim impact evidence. Resp. Ex. LL. The State filed a brief in opposition. Resp. Ex. MM. The Supreme Court of Florida affirmed the trial court's denial of the 3.851 motion and denied the habeas petition on June 14, 2007. Belcher, 961 So.2d 239. The Supreme Court of the United States denied certiorari on November 13, 2007. Belcher v. Florida, 552 U.S. 1026 (2007).

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Response at 10 n.7.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record

before the Court.   Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (AEDPA), the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication[7] resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[8] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

---

[7] "[T]he highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision." Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008). In this case, the Florida Supreme Court was the highest state court to adjudicate Petitioner's claims on the merits.

[8] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, 550 U.S. at 473 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

> Marquard, 429 F.3d at 1303.[9]   The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision.   See Carey v. Musladin,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); Osborne v. Terry, 466
> F.3d 1298, 1305 (11th Cir. 2006).

Id. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." Schriro, 550 U.S. at 473-74.   This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## VI. Ineffective Assistance of Counsel

Petitioner raises numerous ineffective assistance of trial and appellate counsel claims.   "The Sixth Amendment guarantees criminal defendants effective assistance of counsel.   That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations

---

[9] Marquard v. Sec'y, Dep't of Corr., 429 F.3d 1278 (11th Cir. 2005), cert. denied, 547 U.S. 1181 (2006).

omitted).   The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. <u>Id</u>. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.

<u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1002 (11th Cir. 2007) (per curiam).   Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher

threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933. And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland [v. Washington</u>, 466 U.S. 668 (1984)], the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

With respect to claims concerning the ineffectiveness of appellate counsel, the Eleventh Circuit has stated:

> To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal. <u>Shere v. Sec'y Fla. Dep't of Corr.</u>, 537 F.3d 1304, 1310 (11th Cir. 2008); <u>see</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If a defendant fails to establish the deficient performance prong, we need not analyze the prejudice prong, or vice versa. <u>Philmore</u>, 575 F.3d at 1261.

> In determining prejudice in ineffective-assistance-of-appellate-counsel cases, we review the merits of the claim the petitioner asserts his appellate counsel erroneously failed to raise. Id. at 1264-65. Counsel's performance is prejudicial if we find that "the neglected claim would have [had] a reasonable probability of success on appeal." Id. at 1265 (quotations omitted). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

Jones v. United States, 357 Fed.Appx. 253, 254 (11th Cir. 2009) (per curiam) (not selected for publication in the Federal Reporter).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that defense counsel (Alan Chipperfield and Lewis H. Buzzell, III) were ineffective for failing to request a curative instruction and for failing to object to the prosecutor's voir dire comments, which allegedly misstated the State's burden of proof and the presumption of innocence. As acknowledged by the parties, Belcher raised this claim in his 3.851 motion. This issue was addressed at the state court evidentiary hearing, at which Petitioner, Chipperfield and Buzzell testified.[10] After the evidentiary hearing, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and

---

[10] Petitioner was represented by counsel (Christopher Anderson) at the state court evidentiary hearing. See EH Tr. at 2.

17

denied the 3.851 motion with respect to this issue, stating in
pertinent part:

> In the first claim for relief, Defendant
> alleges that counsel rendered ineffective
> assistance by failing to object and request a
> curative instruction in response to the
> State's voir dire misstatements of the burden
> of proof and the presumption of innocence to
> the jury.  At the evidentiary hearing held on
> May 6, 2005, Defendant's trial counsel Alan
> Chipperfield and Lewis Buzzell testified
> regarding the instant claim. Mr. Chipperfield
> testified that he did not remember his thought
> process at the time but that he is not sure
> that the comments by the State during voir
> dire that Defendant complain[ed] of were
> objectionable. (Exhibit "B," pages 6-7.)[11]
> Mr. Buzzell testified that he did not recall
> Mr. Chipperfield objecting to the State's
> comments and that the one sentence that
> Defendant has focused on is taken out of
> context and the rest of the statement
> surrounding it is a correct statement of the
> law. (Exhibit "B," pages 33-34.)[12]
>
> The Court specifically finds Mr.
> Chipperfield's and Mr. Buzzell's testimony was
> both more credible and more persuasive than
> Defendant's allegations. Laramore v. State,
> 699 So.2d 846 (Fla. 4th DCA 1997). The Court
> finds that the statement actually made by the
> State was in itself not objectionable.
> Accordingly, Defendant has failed to establish
> error on the part of counsel for failing to
> object to the State's alleged misstatements of
> the burden of proof and the presumption of
> innocence to the jury. Strickland, 466 U.S.
> 668.

---

[11] See EH Tr. at 544-46.

[12] See EH Tr. at 571-72.

Resp. Ex. HH at 3.  Upon Petitioner's appeal, the Supreme Court of Florida affirmed the circuit court's denial of post conviction relief with respect to this claim, stating in pertinent part:

> Belcher claims that trial counsel should have objected to the following statement by the prosecutor, Mr. De La Rionda, during voir dire questioning of the panel of prospective jurors:
>
>> Mr. De La Rionda: Do all of you understand that as we sit here today the defendant, Mr. Belcher, is presumed to be innocent? Do all of you understand that?
>>
>> (Affirmative response from prospective jurors)
>>
>> Mr. De La Rionda: Okay. Do you understand that does not mean he is innocent?  It means he is presumed to be innocent until you hear the evidence to the contrary?  Can all of you agree with that?
>>
>> (Affirmative response from prospective jurors)[13]
>
> When asked why they did not object, both attorneys testified at the evidentiary hearing below that they did not find the above statements objectionable.  The lower court dismissed this claim, finding that defense counsel's testimony was both more credible and more persuasive than Belcher's allegations. The court also concluded that the statement complained of was a correct statement of the law, and thus Belcher could not establish ineffective assistance on the part of counsel for failing to object.

---

[13] See Resp. Ex. E, Transcript of the Voir Dire Proceeding, at 81.  This Court will refer to the transcripts of the voir dire, trial and sentencing phases (see Resp. Exs. E-V) as "Tr."

> We find that Belcher has not demonstrated error in the trial court's decision to deny relief on this claim. First, inasmuch as Belcher claims that the prosecutor told the potential jurors that the State could overcome its burden by introducing any evidence at all, this is refuted by the record. The transcripts indicate that the prosecutor was merely explaining the presumption of innocence to prospective jurors. In addition, as the lower court concluded, we do not see a proper basis for defense counsel to object. Finally, Belcher cannot establish any prejudice. He admits in his brief, and the trial transcripts confirm, that the jury was correctly instructed on both the presumption of innocence and the reasonable doubt standard of proof by the trial court. Upon review, we find no fault with the lower court's conclusion that Belcher has not established ineffective assistance in this instance.

Belcher, 961 So.2d at 246-47.

As this ineffectiveness claim was rejected on the merits by the Supreme Court of Florida, there is a qualifying state court decision. Thus, this claim should be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this

claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is without merit.  After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsels' testimony over that of Petitioner Belcher.  The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence.  See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Given the trial court's credibility determination, Petitioner's claim is wholly unsupported and therefore must fail.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that counsels' performance was reasonable is even stronger when, as in this case, both counsel are

experienced criminal defense attorneys.[14]  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).  Here, counsels' performance was not deficient.  See EH Tr. at 545-46, 572; Response at 28-32.  As defense counsel testified and as the Supreme Court of Florida found, there was no basis to object to the prosecutor's comments.

---

[14] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."  Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  Indeed, Petitioner Belcher had two very experienced public defenders.  Moreover, both attorneys had extensive death penalty experience.  Lewis Buzzell was the lead counsel during the guilt phase, and Alan Chipperfield led the penalty phase.  EH Tr. at 543, 570.  Chipperfield was admitted to the Florida Bar in 1976, and Buzzell was admitted in 1977.  See http://www.floridabar.org.  At the time of Petitioner's criminal trial in 2001, each lawyer had been practicing criminal law and had been employed with the Public Defender's Office for over twenty years.  EH Tr. at 565, 654.

Even assuming arguendo deficient performance by defense counsel, Belcher has not shown the resulting prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided. Regardless of the prosecutor's comments, as the Supreme Court of Florida found, the trial court properly instructed the jury on both the presumption of innocence and the reasonable doubt standard of proof.

During the voir dire proceeding, the trial judge noted that "James Belcher is still presumed to be innocent of the charges." Tr. at 36, 412. Moreover, prior to opening arguments by counsel, the trial judge instructed the jury: "At no time is it the duty of a defendant to prove his innocence." Id. at 540. At the close of the guilt phase, the trial judge instructed the jury on the presumption of innocence, explaining that:

> [Y]ou must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation in the Information, through each stage of the trial, unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.
>
> To overcome the defendant's presumption of innocence, the State has the burden of proving the crime with which the defendant is charged was committed and the defendant is the person who committed the crime.
>
> The defendant is not required to present evidence or prove anything.

<u>Id</u>. at 1382.  Further, the trial judge then explained the concept of "reasonable doubt."  <u>Id</u>. at 1382-83.  Indeed, the trial judge properly instructed the jury on both the defendant's presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt.[15]  Thus, this ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice.

## B. Ground Two

As ground two, Petitioner claims defense counsel were ineffective because they failed to request a curative instruction and failed to object to the prosecutor's comments denigrating the jury's role.  Arguing that defense counsel "sat silently" as the prosecutor made statements which diminished the jurors' sense of their sentencing responsibility, <u>see</u> Memorandum of Law at 4, Petitioner identifies the specific challenged comments made by the prosecutor.  <u>See</u> Petition at 13-14 (citing Tr. at 126, 146, 451, 1355).  As acknowledged by the parties, Belcher raised this claim in his 3.851 motion.  After identifying the two-part <u>Strickland</u> ineffectiveness test as the controlling law, the trial court denied

_____

[15] Belcher admits "in candor to this tribunal" that the trial judge correctly instructed the jury on the defendant's presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt.  Memorandum of Law at 3 (citing Tr. at 1382-85); Petition at 11.  Belcher's argument that the judge's instruction "came too late" to cure the prosecutor's comments, <u>see</u> Memorandum of Law at 3, is unconvincing.

the 3.851 motion with respect to this issue, stating in pertinent

part:

> In claim two, Defendant asserts that counsel rendered ineffective assistance by allowing comments diminishing the role of the jury to be made by the State.  Defendant argues that the State diminished the jury's sense of responsibility in deciding whether Defendant should be sentenced to death by commenting that the jury's recommendation was merely advisory in violation of <u>Caldwell v. Mississippi</u>, 472 U.S. 320 (1985).  Defendant cites to three instances during voir dire where the State told the prospective jurors that the jury's recommendation carried "great weight." (Defendant's Motion at 5.)[16] Defendant further cites to the State's closing argument during the guilt phase as an instance of diminishing the jury's role to which counsel should have objected. (Defendant's Motion at 5.)[17]

> Initially, the Court notes that prior to the commencement of voir dire, the Court granted the defense's request to instruct the voir dire panels that the Court cannot override the jury's advisory sentencing recommendation unless reasonable men cannot differ on the need to depart from the recommendation.  (R.O.A. Vol. XI. pages 8-10.)[18] This Court instructed both voir dire panels that "I am not required to follow the advisory sentencing recommendation of the jury. However, I am required to assign great weight to your recommendation and cannot override it unless reasonable men wo[u]ld not differ on the need to depart from the recommendation." (R.O.A. Vol. XI, page 36,

---

[16] <u>See</u> Tr. at 126, 146, 451 (the prosecutor's comments during voir dire that allegedly diminished the jury's role).

[17] <u>See</u> Tr. at 1355 (the prosecutor's comment during closing argument).

[18] <u>See</u> Tr. at 9-10.

> Vol. XIII, page 411.)[19] The penalty phase
> instructions given in the instant case were
> the standard penalty phase instructions.  The
> Florida Supreme Court has held that Florida's
> standard penalty phase jury instructions do
> not violate Caldwell.  Thomas v. State, 838
> So.2d 535 (Fla. 2003); Combs v. State, 525
> So.2d 853 (Fla. 1988). Accordingly, counsel
> cannot be deemed ineffective for failing to
> object to the instances [where] the State
> commented that the jury's recommendation
> carried great weight. Teffeteller v. Dugger,
> 734 So.2d 1009 (Fla. 1999).

Resp. Ex. HH at 4.  Upon Petitioner's appeal, the Supreme Court of

Florida affirmed the trial court's denial of post conviction relief

with respect to this claim, concluding "that Belcher has not

demonstrated any error in the trial court's decision to deny relief

on" this claim.  Belcher, 961 So.2d at 249.  The Court noted "that

the jury in this case was properly instructed as to its role in

recommending the death penalty . . . ."  Id.  And, finally, the

Court stated: "we find no fault with the lower court's conclusion

that Belcher has not established ineffective assistance in these

instances."  Id.

Accordingly, this ineffectiveness claim was rejected on the

merits by the Supreme Court of Florida.  As there is a qualifying

state court decision, this claim will be addressed applying the

deferential standard for federal court review of state court

adjudications required by AEDPA.  After a thorough review of the

record and the applicable law, the Court concludes that the state

---

[19] See Tr. at 36, 411-12.

court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this ineffectiveness claim is not entitled to deference under AEDPA, Petitioner's claim is without merit. "To establish a Caldwell violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." Dugger v. Adams, 489 U.S. 401, 407 (1989). However, a Caldwell violation is not established where "the jury was not affirmatively misled regarding its role in the sentencing process." Romano v. Oklahoma, 512 U.S. 1, 9 (1994). The Eleventh Circuit has held that "references to and descriptions of the jury's sentencing verdict . . . as an advisory one, as a recommendation to the judge, and of the judge as the final sentencing authority" do not constitute Caldwell violations where they "accurately characterize the jury's and judge's sentencing roles under Florida law." Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir. 1997), cert. denied, 523 U.S. 1141 (1998). Here, the prosecutor's comments were not the type to mislead the jury as to its role in the sentencing process

in such a way that would allow the jury to feel less responsible than it should for the sentencing decision.   Therefore, counsels' performance was not deficient in that an objection would have been meritless.   See Johnston v. Singletary, 162 F.3d 630, 642-44 (11th Cir. 1998) (rejecting both a substantive Caldwell challenge and an ineffectiveness claim for failing to object on the basis of Caldwell), cert. denied, 528 U.S. 883 (1999).

And, even assuming arguendo deficient performance by defense counsel, Petitioner has not shown the resulting prejudice. Petitioner "candidly admits" that the trial judge told the jury, in the penalty phase, pre-deliberation instructions, that the court would give the jury's recommendation "great weight."   Petition at 14 (citing Tr. at 1828-29); Memorandum of Law at 5.   Thus, this ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice.   See Response at 33-42.

## C. Ground Three

As ground three, Petitioner claims defense counsel were ineffective for failing to request a curative instruction and for failing to object to the prosecutor's voir dire comments, which failed to distinguish the defense's lesser burden of proving mitigating circumstances.   Specifically, Petitioner contends that when the prosecutor explained the two phases of the trial (guilt and penalty) to the prospective jurors and told them that the State

28

must prove guilt beyond a reasonable doubt, he "did not tell the jury about the lesser burden of proof that the defense has in establishing mitigating circumstances in the penalty phase of the trial." Petition at 16 (citing Tr. at 144-45). Further, Petitioner contends that Chipperfield's follow-up remark to the prospective jurors "was extremely misleading and created more than a mere possibility that the jurors might be misguided." Memorandum of Law at 6 (citing Tr. at 220-21); Petition at 16.

Belcher raised this claim in his 3.851 motion. Additionally, this issue was addressed at the state court evidentiary hearing. Following the evidentiary hearing, the trial court identified the Strickland ineffectiveness test as the controlling law and denied the 3.851 motion with respect to this issue, stating in pertinent part:

> In ground three, Defendant alleges that counsel rendered ineffective assistance for failing to object and request a curative instruction to the State's voir dire comment which failed to distinguish the defense's lesser burden of proof to establish mitigating circumstances. At the evidentiary hearing held on May 6, 2005, Mr. Chipperfield and Mr. Buzzell testified regarding the instant claim. Mr. Chipperfield testified that he did not recall his thinking back [then] during the trial, but that the State's comment was explaining the two stages of the trial and did not have anything to do with mitigating circumstances. (Exhibit "B," pages 8-9.) Mr. Chipperfield testified that he does not believe he could have objected and asked the Court to make the State talk about the burden of proving mitigators at that time since the State had not talked about mitigating

circumstances. (Exhibit "B," page 9.)[20] On cross-examination, Mr. Chipperfield testified that he understood that the State has to prove aggravators "beyond a reasonable doubt" but there is no beyond a reasonable doubt proof requirement for mitigation. (Exhibit "B," page 30.)[21]

Mr. Buzzell testified that he did not understand the portion of the State's voir dire quoted by Defendant to say what Defendant characterized it to say. (Exhibit "B," pages 35-36.) Mr. Buzzell testified that the defense's voir dire question where Mr. Chipperfield discussed mitigation is taken out of context by Defendant. (Exhibit "B," pages 36-37.)[22] Mr. Buzzell testified that Mr. Chipperfield covered that mitigation does not have to be found beyond a reasonable doubt and that Mr. Chipperfield characterized the long list of things that could be found to be non-statutory mitigation. (Exhibit "B," page 37.)

The Court finds that the statement actually made by the State was in itself not objectionable. Further, the Court finds that Mr. Chipperfield's comment during voir dire was not improper. Accordingly, Defendant has failed to establish error on the part of counsel for failing to object to the State's alleged voir dire comment which failed to distinguish the defense's lesser burden of proof to establish mitigating circumstances. Strickland, 466 U.S. 668.

Resp. Ex. HH 5-6. Upon Petitioner's appeal, the Supreme Court of Florida affirmed the trial court's denial of post conviction relief with respect to this claim, stating in pertinent part:

---

[20] See EH Tr. at 547.

[21] See EH Tr. at 568.

[22] See EH Tr. at 574-75.

Belcher next argues that, during voir dire, the prosecutor did not inform the jury that the defense has a lesser burden of proof in establishing mitigating factors than the State has in proving the guilt or innocence of the defendant. Hence, Belcher claims that trial counsel was ineffective for not objecting to this omission in the explanation. Belcher also takes issue with a statement made by defense attorney Chipperfield during voir dire, arguing that it compounded the misstatements made by the prosecution.FN7

> FN7. Belcher's argument that Chipperfield "compounded the problem" by telling the prospective jurors that mitigating circumstances must be proven beyond a reasonable doubt is clearly refuted by the record. In his brief, Belcher cites the following statement from voir dire:
>
> Mr. Chipperfield: Mr. De La Rionda mentioned that if we get to a penalty phase, if there's a conviction of first-degree murder and we have this penalty phase that the purpose of that penalty phase is for the jurors to consider aggravating circumstances and mitigating circumstances. Aggravating circumstances are certain facts about the crime or about the person who's convicted that under Florida law suggest that death might be an appropriate penalty. And they're all defined by statute and they have to be proven beyond a reasonable doubt. Mitigating - do you all understand that?
>
> (Affirmative response from the prospective jurors).
>
> Although Belcher does not explain the error with the above statement,

31

presumably he is referring to Chipperfield explaining the burden of proof for the aggravators but failing to explain it for the mitigators. However, Chipperfield's comment was part of a larger discussion about mitigation in which he went on to explain the types of things that can be offered as mitigation and asked the prospective jurors if they would be able to use that type of evidence in determining if a life sentence is more appropriate. Accordingly, this subclaim is refuted by the record, and relief was properly denied.

As above, Belcher has not shown any error with the trial court's decision to deny relief on this claim. At the evidentiary hearing below, Chipperfield testified that he could not remember why he did not object to the State's explanation of the bifurcated trial process and its failure to mention a lower burden of proof for mitigators, but he guessed it was because he did not feel that he could force the prosecutor to mention it since the prosecutor was discussing the trial procedure, not mitigation. Buzzell testified that he felt the challenged statements were being taken out of context, and furthermore that, overall, Chipperfield did a thorough job in explaining the process of establishing mitigating factors. We agree with the court below that nothing the State said was objectionable, and furthermore that Chipperfield's challenged comment was not improper. We also note that the jury in this case was properly instructed regarding the proper standard of proof necessary to establish mitigators. We affirm the trial court's decision to deny relief in this instance.

Belcher, 961 So.2d at 247.

As there is a qualifying state court decision, this claim will be addressed applying the deferential standard for federal court

32

review of state court adjudications.  Upon review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit.  First, there is no deficient performance because there was no basis for an objection.  And, second, even assuming arguendo deficient performance by defense counsel, Petitioner has not shown the resulting prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided.  The court properly explained the concept of mitigation and its attendant lesser standard of proof to the jury during the penalty phase.  Tr. at 1834.  Thus, this ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice.  <u>See</u> Response at 43-46.

## D. Ground Four

As ground four, Petitioner claims defense counsel were ineffective because they failed to request a curative instruction and object to the prosecutor's voir dire comment indicating that the defendant has the burden of proving that the mitigating circumstances outweigh aggravating circumstances, rather than vice-versa.  Petition at 19 (citing Tr. at 149).  Belcher raised this claim in his 3.851 motion, and the trial court rejected it, stating in pertinent part:

> In ground four, Defendant alleges counsel rendered ineffective assistance for failing to object and request a curative instruction to the State's voir dire comment indicating that Defendant has the burden of proving that mitigating circumstances outweigh the aggravating circumstances, rather than vice versa. The record reveals that the penalty phase instructions given in the instant case were the standard penalty phase instructions. The Florida Supreme Court has consistently held that Defendant's burden shifting argument is without merit. Griffin v. State, 866 So.2d 1 (Fla. 2003)[23]; Randolph v. State, 853 So.2d 1051, 1067 (Fla. 2003); Floyd v. State, 808 So.2d 175 (Fla. 2002); Demps v. Dugger, 714 So.2d 365, 368 (Fla. 1998); Johnson v. State, 660 So.2d 637, 647 (Fla 1995). Further, the Court does not find the comments by the State that Defendant complains of were objectionable. (R.O.A. Vol. XI, pages 148-149.) Therefore, Defendant has failed to

---

[23] See Griffin, 866 So.2d at 14 ("We have also repeatedly rejected claims that the standard jury instruction impermissibly shifts the burden to the defense to prove that death is not the appropriate sentence.") (citations omitted).

> establish error on the part of counsel or
> prejudice to his defense. Strickland, 466
> U.S. 668.

Resp. Ex. HH at 6. Upon Petitioner's appeal, the Supreme Court of

Florida affirmed the trial court's denial of post conviction relief

with respect to this claim, concluding "that Belcher has not

demonstrated any error in the trial court's decision to deny relief

on" this claim. Belcher, 961 So.2d at 249. Noting that the jury

was properly instructed "regarding the proper evaluation of

aggravating circumstances versus mitigating circumstances," the

Court concluded: "we find no fault with the lower court's

conclusion that Belcher has not established ineffective assistance

. . . ." Id.

Applying the deferential standard for federal court review of

state court adjudications required by AEDPA, the Court concludes

that the state court's adjudication of this claim was not contrary

to clearly established federal law and did not involve an

unreasonable application of clearly established federal law. Nor

was the decision based on an unreasonable determination of the

facts in light of the evidence presented in the state court

proceedings. Thus, Petitioner is not entitled to relief on the

basis of this claim.

Even assuming that the state court's adjudication of this

claim is not entitled to deference under AEDPA, Petitioner's claim

is without merit. The prosecutor's comments, see Tr. at 148-49,

were not objectionable.   Thus, based on the record as a whole,
counsels' performance was not deficient in that an objection would
have been meritless.   And, even assuming arguendo deficient
performance by defense counsel, Petitioner has not shown the
resulting prejudice.   Therefore, this ineffectiveness claim is
without merit since Petitioner has neither shown deficient
performance nor resulting prejudice.   See Response at 47-51.

### E. Ground Five

As ground five, Petitioner asserts that defense counsel were
ineffective because they failed to request a curative instruction
and object to the prosecutor's comments indicating that a killing
done after "consciously deciding to kill" is premeditated first
degree murder.   Petition at 21-22 (citing Tr. at 166-67, 467-68,
1345).   Specifically, Belcher argues that "it was the elimination
of the key element of 'reflection' that was so misleading and so
damaging to the defense." Memorandum of Law at 10.   Belcher raised
this claim in his 3.851 motion, and the issue was addressed at the
state court evidentiary hearing.   Ultimately, the trial court
identified the Strickland ineffectiveness test as the controlling
law and denied the 3.851 motion with respect to this issue, stating
in pertinent part:

> In ground five, Defendant alleges that
> counsel rendered ineffective assistance for
> failing to object and request a curative
> instruction to the State's comments indicating
> that a killing done instantly after deciding
> to kill is Premeditated First Degree Murder.

36

At the evidentiary hearing held on May 6, 2005, Mr. Chipperfield and Mr. Buzzell testified regarding this claim. Mr. Chipperfield testified that the first comment by the State addressed at the hearing did not contain the word "instantly" as alleged and[,] if it had[,] he might have objected. (Exhibit "B," pages 10-12.) Mr. Chipperfield testified that he believes that the State's comment was right out of the instruction. (Exhibit "B," page 12.) Mr. Chipperfield testified that the second comment by the State addressed at the hearing contained the requirements of the jury instruction: reflection followed by a decision. (Exhibit "B," pages 12-13.) Mr. Chipperfield testified that the third comment by the State, which occurred during closing arguments, was not objectionable since the victim was dead and the defense had conceded that the victim was dead. (Exhibit "B" pages 13-16.) Mr. Buzzell testified concerning the State's first comment raised by Defendant that while the State did not repeat the part of the jury instruction that there must be time for reflection, the statement made by the State was not an incorrect statement of the law. (Exhibit "B" pages 37-40.[)] Mr. Buzzell testified that at most the State's comment was an incomplete statement. (Exhibit "B," page 40.)

The Court specifically finds Mr. Chipperfield's and Mr. Buzzell's testimony was both more credible and more persuasive than Defendant's allegations. Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997). The Court finds that the statements actually made by the State were in themselves not objectionable. Accordingly, Defendant has failed to establish error on the part of counsel for failing to object to the State's alleged comments indicating that a killing done instantly after deciding to kill is Premeditated First Degree Murder. Strickland, 466 U.S. 668.

Resp. Ex. HH at 6-7. Upon Petitioner's appeal, the Supreme Court of Florida affirmed the trial court's denial of post conviction relief with respect to this claim, stating in pertinent part:

> Next, Belcher takes issue with the following comments made by the prosecutor during voir dire, alleging that trial counsel was ineffective for failing to object or request a curative instruction since it indicates that a killing done instantaneously after deciding to kill is premeditated first-degree murder:
>
>> Mr. De la Rionda: *The law does not fix the exact period of time that must pass between the formation in the mind of the premeditated intent to kill and the actual killing.* Do all of you understand that? There doesn't have to be an exact period of time. The premeditated intent to kill must be formed before the killing. And the question of premeditation is a question of fact to be determined by you from the evidence. Do all of you understand that?[24]
>>
>> . . . .
>>
>> (Affirmative response from prospective jurors)
>>
>> Mr. De la Rionda: You've got to formulate the intent to kill and have the intent to kill. *It can be a matter of seconds*, it's all what you feel based on the circumstances. Do you understand that?[25]

---

[24] <u>See</u> Tr. at 166-67.

[25] <u>See</u> Tr. at 167-68.

(Affirmative response from prospective jurors)

Belcher also challenges the following comment from the prosecutor's closing statement, arguing that it informed the jury that the mere fact of the victim's death was in itself sufficient to prove premeditated murder:

> The State is required to prove for premeditated murder the following: There's two ways, first of all, of proving murder in the first-degree. One is what's called premeditated murder and the other one is known as felony murder. And the bottom line in terms of proving beyond a reasonable doubt is that she is dead. There's no dispute about that.[26]

At the evidentiary hearing, Chipperfield testified that he could not remember why he did not object at the time, other than he thought the prosecutor's definition of premeditation was straight out of the standard jury instruction, and furthermore he did not see any grounds for objection to the prosecutor's comment during his closing. Buzzell also testified that he felt the prosecutor's explanation was a correct statement of the law, perhaps incomplete but not incorrect.

In denying relief on this claim, the court below found that the prosecutor's statements themselves were not objectionable, and that therefore Belcher could not establish deficient performance on behalf of his trial counsel. We find no error in this conclusion. The prosecutor's comments were largely identical to the standard jury instruction on premeditation.FN8 Concerning the prosecutor's comment during closing argument, the

---

[26] See Tr. at 1345.

prosecutor did go on to state that premeditation requires time long enough for reflection[27]; Belcher only selectively cites one part of the State's closing in making this claim. Finally, as with the prior claims, the trial judge read the standard jury instruction on premeditation at the close of the guilt-phase trial. Relief was properly denied on this claim.

> FN8. The standard jury instruction on premeditation reads as follows:
>
> "Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
>
> The question of premeditation is a question of fact to be determined by you from the evidence. It will be sufficient proof of premeditation if the circumstances of the killing and the conduct of the accused convince you beyond a reasonable doubt of the existence of premeditation at the time of the killing.
>
> Fla. Std. Jury Instr. (Crim). 7.2.[28]

Belcher, 961 So.2d at 247-48.

---

[27] See Tr. at 1346.

[28] Judge Dearing read the standard jury instruction on premeditation to the jury. See Tr. at 1375-76.

This ineffectiveness claim was rejected on the merits by the Supreme Court of Florida. Thus, as there is a qualifying state court decision, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Upon review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit. Indeed, there was no deficient performance because there was no basis for an objection. The prosecutor did not misstate the law. Quite to the contrary, the prosecutor informed the jury that the law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the actual act of killing, but that it must be long enough for "reflection." Tr. at 467, 1346.

And, even assuming arguendo deficient performance by defense counsel, Petitioner has not shown the resulting prejudice. Petitioner has not shown that a reasonable probability exists that

41

the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided.  The trial judge properly instructed the jury on premeditation, stating that "[t]he law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing." Id. at 1376.  He explained that "[t]he period of time must be long enough to allow reflection by the defendant." Id.  Further, he stated that the premeditated intent to kill must be formed before the killing. Id. Thus, the jury was correctly informed that reflection was required for premeditation.  In sum, this ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice.  See EH Tr. at 547-54, 575-78; Response at 52-58.

### F. Ground Six

Belcher claims that defense counsel were ineffective because they failed to request a curative instruction and also failed to object to the prosecutor's voir dire comments "suggesting" that the State does not have to prove intent for first degree murder. Petition at 24-25 (citing Tr. at 169, 469).  Belcher asserts that the prosecutor's statements that the State does not have to prove motive coupled with his failure to distinguish between motive and premeditated intent misguided and confused the jurors.  Memorandum of Law at 11-14.  Belcher raised this claim in his 3.851 motion.

42

The trial court, applying <u>Strickland</u>, rejected this claim, stating in pertinent part:

> In ground six, Defendant alleges that counsel rendered ineffective assistance for failing to object and request a curative instruction to the State's comment that suggested the State does not have to prove intent for First Degree Premeditated Murder. Defendant argues that the State's statement that it did not have to prove motive suggested to the jury that the State did not have to prove intent to kill. The first comment Defendant complains of was:
>
>> Do all of you understand that the State doesn't have to prove motive? You know sometimes in books or on TV everybody is talking about what was the motive. The State does not have to prove motive.
>
> (R.O.A. Vol. XI, page 169.) The State Attorney's second comment Defendant complains of was:
>
>> Do all of you understand that sometimes on TV or in books, you know, they've got motive. Here was the motive. That the State doesn't have to prove motive in any murder. Do all of you understand that?

(R.O.A. Vol. XIII, page 469.)

> Motive for a murder "is not an essential element of the crime of first degree murder and a person may be convicted of this crime even if no motive is established." <u>Bedoya v. State</u>, 779 So.2d 574, 578 (Fla. 5th DCA 2001). The lack of motive does not prevent proof of premeditation. <u>Daniels v. State</u>, 108 So.2d 755 (Fla. 1959). The Court finds that the State's comments that it did not have to prove a motive for the victim's murder did not suggest to the jury that the State did not have to prove that Defendant had an intent to kill the

43

> victim. Accordingly, Defendant has failed to
> establish error on the part of counsel or
> prejudice to his case.  <u>Strickland</u>, 466 U.S.
> 668.

Resp. Ex. HH at 7-8.  Upon Petitioner's appeal, the Supreme Court
of Florida affirmed the trial court's denial of post conviction
relief with respect to this claim, concluding "that Belcher has not
demonstrated any error in the trial court's decision to deny relief
on" this claim.  <u>Belcher</u>, 961 So.2d at 249.  In addition, the Court
stated "as the lower court also correctly noted, motive is not a
required element of first-degree murder.  <u>See</u> <u>Norton v. State</u>, 709
So.2d 87, 92 (Fla. 1997)."  <u>Belcher</u>, 961 So.2d at 249.  As such,
the Court concluded:  "we find no fault with the lower court's
conclusion that Belcher has not established ineffective assistance
. . . ."  <u>Id</u>.

Applying the deferential standard for federal court review of
state court adjudications required by AEDPA, the Court, after
review of the record and the applicable law, concludes that the
state court's adjudication of this claim was not contrary to
clearly established federal law and did not involve an unreasonable
application of clearly established federal law.  Nor was the
decision based on an unreasonable determination of the facts in
light of the evidence presented in the state court proceedings.
Thus, Petitioner is not entitled to relief on the basis of this
claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit. Defense counsels' performance was not deficient in that an objection would have been meritless. The prosecutor's comments (that the State is not required to prove motive) were correct statements of Florida law. Such prosecutorial comments did not suggest to the jury that the State did not have to prove intent to kill. And, even assuming arguendo deficient performance by defense counsel, Petitioner has not shown the resulting prejudice. The trial judge properly instructed the jury on the elements of first degree premeditated murder. See Tr. at 1375-76. Thus, this ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice. See Response at 59-61.

### G. Ground Seven

Belcher claims defense counsel were ineffective because he believes they conceded that the victim suffered a sexual battery. Petition at 27-29 (citing Tr. at 565-66); Reply at 5-6. While "candidly" admitting that defense counsel did not specifically admit that a sexual battery had occurred, Petitioner contends that defense counsel, in arguing that the only important issue was who had done it, in effect "went along" with the prosecutor's effort to persuade the jury that the victim had been sexually battered and murdered by the same person. Memorandum of Law at 14-15. As

45

acknowledged by the parties, Belcher raised this claim in his 3.851

motion, and the issue was addressed at the state court evidentiary

hearing.   Following that hearing, the trial court, applying

Strickland, denied the 3.851 motion with respect to this issue,

stating in pertinent part:

> In ground seven, Defendant asserts that counsel rendered ineffective assistance by conceding that the victim suffered a sexual battery, the predicate offense needed for a Felony First Degree Murder conviction. Mr. Chipperfield testified at the May 6, 2005, evidentiary hearing concerning this allegation. Mr. Chipperfield testified that the only real issue at trial was the identity of the perpetrator. (Exhibit "B," page 19.) Mr. Chipperfield testified that the defense's theory at trial was that Defendant had consensual sex with the victim, not sexual battery, and that someone else committed the murder and possibly a sexual battery. (Exhibit "B," page 19.)
>
> Mr. Buzzell testified at the May 6, 2005, hearing regarding the allegation of conceding the victim suffered a sexual battery. Mr. Buzzell testified that telling the jury that the only real issue is the identity of the perpetrator was not a concession that Defendant committed a sexual battery. (Exhibit "B," page 40-42.) Mr. Buzzell testified that the defense was that Defendant did not commit the sexual battery or first degree murder. (Exhibit "B," page 43.) On cross-examination, Mr. Buzzell testified that the defense's overall approach at trial was to distance Defendant's DNA from the time of the victim's death and the time of her injuries as much as possible. (Exhibit "B," page 52.)
>
> The Court specifically finds Mr. Chipperfield's and Mr. Buzzell's testimony was both more credible and more persuasive than Defendant's allegations. Laramore v. State,

46

> 699 So.2d 846 (Fla. 4th DCA 1997). The Court
> finds that defense counsel did not concede
> that the sexual battery had occurred.
> Counsel's defense was that Defendant was not
> the person who committed these crimes.
> Counsel's theory was that Defendant had
> consensual sex with the victim at some time
> other than the time of the murder and possible
> sexual battery and so their failure to
> specifically contest that this was a murder
> and sexual battery did not constitute a
> concession on counsel's part about anything
> relevant to their defense. The Court finds
> defense counsel did not specifically concede
> that any crime, especially sexual battery, had
> occurred. Accordingly, Defendant has failed
> to establish error on the part of counsel or
> prejudice to his case. Strickland, 466 U.S.
> 668.

Resp. Ex. HH at 8-9. Upon Petitioner's appeal, the Supreme Court of Florida affirmed the trial court's denial of post conviction relief with respect to this claim, stating in pertinent part:

> Belcher next cites a passage from his
> defense counsel's opening argument that he
> feels conceded that the victim suffered a
> sexual battery, thus making his convictions
> for sexual battery and for felony murder
> almost certain. Belcher takes issue with the
> following statement, alleging that it
> constitutes ineffective assistance:
>
> > Obviously, and quite tragically, Ms.
> > Embry is dead. There's no dispute
> > about that, and there's really no
> > dispute about the things that the
> > State went over in great detail with
> > you about, such as she lived at home
> > alone, that her brother found her
> > when she didn't show up for school
> > and work that day. Those kind of
> > things. And so a lot of the
> > evidence that you'll be hearing will
> > be important for your consideration.
> > But the evidence, that kind of

evidence, will not show you what the ultimate question is. It won't answer the ultimate question for you, which is who did it. And that's what you need to be concerned with.[29]

In denying relief on this claim, the lower court relied on the testimony of Buzzell and Chipperfield given at the evidentiary hearing to conclude, first, that defense counsel's theory was that Belcher did not commit the crime, and also that the above statement did not specifically concede anything relevant to their defense. Accordingly, the court below concluded that Belcher was unable to establish deficient performance.

We find no error in this conclusion. It is not clear from the transcripts that defense counsel admitted anything other than the fact that victim Embry was deceased; accordingly, inasmuch as Belcher claims that his attorneys admitted that a sexual battery occurred or his guilt in such a crime or both, this argument is refuted by the record. In addition, as Buzzell testified at the evidentiary hearing, his strategy in the opening statement was to build credibility with the jury by not disputing the fact that the victim was dead; he also confirmed that he told the jury that the DNA evidence proved only that Belcher had had sex with the victim, not that he committed the sexual battery. This strategic decision to concede the victim's death in the opening statement provides no basis for an ineffectiveness claim. See Occhicone, 768 So.2d at 1048.[30] As with the other

---

[29] See Tr. at 565-66.

[30] Occhicone v. State, 768 So.2d 1037, 1048 (Fla. 2000) ("Moreover, strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.").

> ineffectiveness arguments, relief on this
> claim was properly denied.

<u>Belcher</u>, 961 So.2d at 249.

This ineffectiveness claim was rejected on the merits by the Supreme Court of Florida. Thus, the Court applies the deferential standard for federal court review of state court adjudications. Following a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is without merit. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsels' testimony over that of Petitioner. Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. Given the trial court's credibility determination, Petitioner's claim is wholly unsupported, and therefore the claim must fail.

Moreover, based on Chipperfield and Buzzell's testimony, defense counsels' performance was not deficient. <u>See</u> EH Tr. at

49

554-57 (Chipperfield's testimony that the defense theory was that Belcher had consensual sex with the victim, but did not commit the sexual battery, and that someone else committed the murder "possibly along with a sexual battery"); 580-81, 588-90 (Buzzell's testimony that the defense theory was that Belcher did not commit the sexual battery or the murder). And, even assuming arguendo deficient performance by defense counsel, Petitioner has not shown the resulting prejudice. Belcher has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided. In sum, this ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice. See Response at 62-66.

### H. Ground Eight

As ground eight, Petitioner claims that defense counsel were ineffective because they failed to request a curative instruction and failed to object to the prosecutor's impermissible appeals to the emotions and sympathy of the jurors. In support of this allegation, Belcher identifies the following portions of the trial: (1) the testimony of Ricky Embry, the victim's brother, where he testified that he was "very close" to the victim, that he played the role of big brother and looked out for her, that she had been attending classes at Florida Technical College and working two

jobs, that she "was very neat," that he had to touch her body to
confirm her death and had observed that rigor mortis had set in,
see Tr. at 571-78, 583; (2) the testimony of Pamela Lyle that the
victim worked at the Arlington Acute Care Center after school four
to five days a week from about 4:00 p.m. until 10:00 p.m., id. at
746; (3) the prosecutor's closing arguments where he argued that
the victim was staring at her killer in the last minutes of her
life and that, by working two jobs and attending school, she "was
trying to make it in this world" when "[h]er life came to an abrupt
end," see id. at 1318, 1330, 1353; and (4) the prosecutor's cross-
examination of a mitigation witness (Stephanie Millette Cook, a
former employee of Apalachee Correctional Institution) in the
penalty phase regarding life inside the prison walls, including how
prison inmates watch television, eat a variety of foods, work
outside the prison and prepare legal pleadings, id. at 1651-55.
See Petition at 31-32; Memorandum of Law at 16.

As the parties acknowledge, Belcher raised this claim in his
3.851 motion. Identifying the Strickland ineffectiveness test as
the controlling law, the trial court denied the 3.851 motion with
respect to this issue, stating in pertinent part:

> In ground eight, Defendant alleges that
> counsel rendered ineffective assistance by
> permitting impermissible appeals to the
> emotions and sympathy of the jurors. The first
> instance of appealing to the emotions and
> sympathy of the jurors Defendant cites to is
> the testimony of the victim's brother, Ricky
> Embry. Mr. Embry testified at trial that he

51

had a close relationship with his sister and
that his looking out for her was why he was
the individual to discover her body. (R.O.A.,
Vol. XIII, pages 571-574.) During the
questioning by the State of Mr. Embry
concerning his sister attending school and
working two jobs, Mr. Buzzell specifically
objected to this line of questioning as victim
impact testimony intended to create or lend
sympathy to the victim and the State withdrew
its question. (R.O.A. Vol. XIII, pages 575-
577.) Finally, Mr. Embry's testimony regarding
the victim's housekeeping habits was relevant
to the issue of Defendant's DNA found on the
victim's bathroom slippers. (R.O.A. Vol. XIII,
page 578.)

. . . .[31]

The third instance of appealing to the
emotions and sympathy of the jurors Defendant
cites to is the State's guilt phase closing
argument. Initially, this Court notes that
wide latitude is permitted in arguing to a
jury. Thomas v. State, 326 So.2d 413 (Fla.
1975); Spencer v. State, 133 So.2d 729 (Fla.
1961), cert. denied, 369 U.S. 880 (1962),
cert. denied, 372 U.S. 904 (1963). Logical
inferences may be drawn, and counsel is
allowed to advance all legitimate arguments.
Spencer. The standard for review of
prosecutorial misconduct is whether "the error
committed was so prejudicial as to vitiate the
entire trial." Cobb v. State, 376 So.2d 230,
232 (Fla. 1979). Jones v. State, 612 So.2d
1370 (Fla. 1993); State v. Murray, 443 So.2d
955 (Fla. 1984). The comments by the
prosecutor, of which Defendant complains, did
not rise to the level of vitiating the entire
trial. (R.O.A. Vol[.] XVIII pages 1318, 1330,

---

[31] In the 3.851 motion, as an additional instance allegedly
calculated to arouse the emotions of the jurors, Petitioner claimed
that the State offered into evidence photographs of the victim in
the bathtub and as she was removed from the bathtub; however,
Petitioner did not raise this sub-issue in the Petition before this
Court.  See Petition at 31-32; Memorandum of Law at 15-16.

Vol. XX page 1553.) Moreover, the comments by the prosecutor did not "'inflame the minds and passions of the jurors so that their verdict reflect[ed] an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'" <u>Jones v. State</u>, 612 So.2d 1370, 1374 (Fla. 1993) <u>quoting</u> <u>Bertolotti v. State</u>, 476 So.2d 130 (Fla. 1985). As counsel objected to both the testimony of Mr. Embry and the introduction of the photographs of the victim, and the State's closing argument would not have inflamed the minds and passions of the jury, Defendant has not established that counsel erroneously allowed impermissible appeals to the emotions and sympathy of the jury. <u>Strickland</u>, 466 U.S. 668.

Resp. Ex. HH at 9-11. Following Belcher's appeal, the Supreme Court of Florida affirmed the trial court's denial of post conviction relief concerning this claim, concluding as follows:

In his next allegation of ineffective assistance of trial counsel, Belcher argues that defense counsel failed to object to numerous statements made by the victim's brother, Ricky Embry, during the guilt phase. Belcher also argues that, although trial counsel objected to a few of the photographs offered into evidence by the State, there were others that were published to the jury that constituted gruesome appeals to the jury's sympathy.[32] Belcher also takes issue with a few statements from the prosecutor's closing argument as flagrant appeals to the emotions of the jurors. Finally, Belcher argues that trial counsel should have objected when, during the penalty phase, the prosecution got mitigation witnesses, prison inmates, to testify on cross-examination about prison life. Belcher claims that this entire line of questioning was calculated to inflame, arouse

---

[32] As previously noted, Belcher does not raise this ineffectiveness claim in the Petition before this Court.

fear of prison escape, and create an overall sense of indignation in the minds of the jurors.

Again, we find that Belcher has demonstrated no error in the trial court's decision to summarily deny relief on this claim. The lower court concluded that defense counsel did, in fact, object during Ricky Embry's testimony, arguing that it constituted victim impact testimony intended to create sympathy for the victim; furthermore, trial counsel also objected to the admission of some of the photographs. The court also concluded that, given the wide latitude allowed in arguing to a jury, the comments by the prosecutor during the closing argument did not rise to the level of vitiating the entire trial. We affirm the trial court's reasoning in rejecting relief on this claim and agree that Belcher has not established ineffective assistance of counsel.

Belcher, 961 So.2d at 249-50.

As this claim was rejected on the merits by the Supreme Court of Florida, the Court will address this claim applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is without merit.  Defense counsels' performance was not deficient in that Buzzell objected to the prosecutor's question about whether the victim was "ambitious," arguing that "what it does is create sympathy or lend sympathy to her."  Tr. at 575-76.  Further, counsel cannot be faulted for failing to object to relevant evidence.  The victim's attending school was relevant because the State had introduced evidence that Belcher contacted the victim while she was attending classes at Florida Technical College; her housekeeping habits were relevant because several items in the bathroom were found in disarray; and her work habits and hours were relevant since the time she left work, arrived at her townhouse later that night and was last seen by a neighbor were important events for the time line.  Additionally, since Mr. Embry found the body of his sister, his testimony about discovering her body in the bathtub and confirming her death for the 911 dispatcher was relevant.  Finally, with respect to the prosecutor's cross-examination of the mitigation witnesses regarding prison life, defense counsel responded by eliciting testimony about the harshness of prison life and the fact that inmates serving life sentences remain incarcerated until they die, irrespective of any tentative release date assigned to them.  Id. at 1657-59, 1710-11,

1713-14, 1748-50, 1760-61.   Thus, the Court finds that counsels' representation of Petitioner was not deficient.

And, even assuming arguendo deficient performance by defense counsel, Belcher has not shown the resulting prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided. In sum, this ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice.  See Response at 67-72.

### I. Ground Nine

As ground nine, Petitioner contends that counsel provided ineffective assistance because they failed to use a defense gynecologist to challenge the State's evidence of a forcible sexual battery.  Specifically, Petitioner argued:

> Admittedly, the post-conviction, evidentiary hearing testimony of gynecologist John Borde[r]lin, M.D. was essentially the same as the jury trial testimony of the State Medical Examiner.  However, following the testimony of the State's witnesses with the testimony of a defense gynecologist would have been a timely reminder to the . . . jurors that the victim's vaginal injuries may well have been caused by rough, consensual sex. This would have made a more persuasive defense.  Such a sequence of witnesses [would] have re-focused the jurors' attention on the testimony of the various State witnesses who had observed the victim with other men and who had found semen elsewhere in the victim's apartment which had never been DNA tested.

56

Memorandum of Law at 17.  Belcher raised this claim in his 3.851

motion, and the issue was addressed at the state court evidentiary

hearing.  After the hearing, the trial court, applying Strickland,

rejected the claim, stating:

>          In ground nine, Defendant asserts that
> counsel rendered ineffective assistance by
> failing to use a defense Gynecologist to
> counter the State's expert's opinion that the
> physical evidence shows a forcible sexual
> battery.  At the April 27, 2005, evidentiary
> hearing, Defendant presented the testimony of
> Dr. John G. Borderlin to support the instant
> allegation.   Dr. Borderlin testified that
> based on the materials he reviewed, the victim
> suffered bruises on her body that were
> consistent with some type of forcible injury
> that should not be seen from consensual normal
> sex.   (Exhibit "A," pages 10-11.)   Dr.
> Borderlin testified that the trauma to the
> victim's vaginal area can occur with rough
> consensual sex. (Exhibit "A," page 12.).  On
> cross-examination, Dr. Borderlin testified
> that he does not dispute Dr. Floro's findings
> and agrees that there was evidence of sexual
> battery in this case. (Exhibit "A," page 15.)
> On redirect examination, Dr. Borderlin
> testified that in his opinion the victim had
> sex with Defendant within 24 hours of her
> death and that she had forced sex prior to
> being murdered. (Exhibit "A," page 16.)
>
>          At the May 6, 2005, evidentiary hearing,
> Mr. Chipperfield and Mr. Buzzell testified
> regarding this allegation.  Mr. Chipperfield
> testified that the defense expected Dr. Floro,
> the State's medical expert, to give them some
> of what they wanted at trial, but he did not
> recall the thought process for not bringing
> another medical expert into the case. (Exhibit
> "B," pages 19-20.)  Mr. Buzzell testified that
> defense counsel did not present a defense
> medical doctor because they were satisfied
> with the information that they obtained from
> Dr. Floro and that some of his opinions were

helpful to their defense. (Exhibit "B," pages 43-44.)

The Court specifically finds Mr. Chipperfield's and Mr. Buzzell's testimony was both more credible and more persuasive than Defendant's allegations. <u>Laramore v. State</u>, 699 So.2d 846 (Fla. 4th DCA 1997). The Court finds that Defendant has failed to prove that the calling of a defense medical expert would have helped his case in any way. The medical expert retained by Defendant on this post-conviction motion came to the same conclusion as the medical examiner, that in this case the sex would have been against the victim's will. Dr. Borderlin concluded that the sex was non-consensual when considered in light of the victim's other injuries, and he had no dispute with Dr. Floro's findings and conclusions. Therefore, there would have been no benefit to calling a separate defense expert. Furthermore, defense counsel was satisfied with the testimony they got from Dr. Floro to the extent it helped them in their defense theory of the case. Accordingly, Defendant has failed to establish error on the part of counsel or prejudice to his case. <u>Strickland</u>, 466 U.S. 668.

Resp. Ex. HH at 11-12. Upon Petitioner's appeal, the Supreme Court of Florida affirmed the trial court's denial of post conviction relief concerning this claim and stated:

Belcher argues that defense counsel was ineffective for failing to retain its own gynecologist to stress that the comparatively minimal injuries found in the victim's vagina could have been caused by a great many things besides sexual battery. Belcher asserts that such an expert could have assisted defense counsel in better understanding and addressing the State's witness, Dr. Bonifacio Floro, the medical examiner.

This claim was addressed at the evidentiary hearing below, wherein

58

Chipperfield testified the attorneys felt that Dr. Floro could "give them what they wanted" at the trial. Buzzell likewise testified that he and Chipperfield were satisfied with the information they were able to obtain from Dr. Floro. Postconviction counsel also called Dr. John Borderlin, a gynecologist, at the evidentiary hearing in an effort to demonstrate the kind of expert opinion that trial counsel could have presented during the guilt phase. Dr. Borderlin testified regarding the vaginal injuries sustained by the victim, agreeing that they were not consistent with "consensual normal sex," but that they could be the result of rough consensual sex. On cross-examination, however, Dr. Borderlin confirmed that he had no disputes with the testimony given by the State's expert during the guilt-phase trial, and he agreed that there was evidence of a sexual battery. He testified that it was his opinion that the sex in this case was not consensual and was against the victim's will.

We affirm the lower court's decision to deny relief on this claim as Belcher has established neither deficient performance nor prejudice. First, Belcher cannot establish deficient performance for failure to retain an expert witness when defense counsel rigorously challenged the State's own witness. This Court rejected a similar argument in <u>Reed v. State</u>, 875 So.2d 415 (Fla. 2004), where the defendant alleged ineffective assistance of trial counsel for failing to retain a defense expert; however, we held that to be unnecessary where defense counsel cross-examined the State's experts to establish the facts necessary for the defense. <u>Id.</u> at 427-28. In the instant case, Belcher himself identifies in his brief the ways in which defense counsel attacked Dr. Floro's testimony; for example, Dr. Floro agreed that it is possible for a woman to sustain such vaginal injuries in vigorous, consensual intercourse. Dr. Floro also admitted that the sperm swabbed from the victim's vagina could have been deposited in the victim's body over

a fairly large period of time, anywhere from three to six days prior to the victim's death, up to just six hours prior to the victim's death. Thus, the record makes clear that defense counsel attempted to confront the evidence of a sexual battery not through its own expert, but by vigorously challenging the State's expert. Belcher cannot premise a postconviction claim of ineffective assistance based on a reasonable strategic decision by his trial counsel. See Occhicone, 768 So.2d at 1048.

Belcher is also unable to establish prejudice to his defense, given that the expert obtained for the postconviction proceedings came to the same conclusions as Dr. Floro, namely that the victim evidenced signs of a sexual battery. Relief on this claim was properly denied.

Belcher, 961 So.2d at 250-51.

As this ineffectiveness claim was rejected on the merits by the Supreme Court of Florida, the Court applies the deferential standard for federal court review of state court adjudications. Upon review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. For this reason, Belcher is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference under

60

AEDPA, Petitioner's claim is without merit.  After the evidentiary hearing, the state court resolved the credibility issue in favor of counsel.  Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence.  Moreover, given the trial court's credibility determination, Belcher's claim is wholly unsupported.  Therefore, the claim must fail.

Indeed, based on Chipperfield and Buzzell's testimony, their performance was not deficient.  See EH Tr. at 554-57 (Chipperfield's testimony that the defense theory was that Belcher had consensual sex with the victim, but did not commit the sexual battery, and that someone else committed the murder "possibly along with a sexual battery"); 580-81, 588-90 (Buzzell's testimony that the defense theory was that Belcher did not commit the sexual battery or the murder); 557-58 (Chipperfield's testimony that "we expected that Dr. Floro would give us some of what we wanted at trial"); 581-82 (Buzzell's testimony that "we were satisfied with the information that we were able to get from the medical examiner" and that Dr. Floro's medical opinions were "helpful" to the defense).  With a vigorous cross-examination of Dr. Floro, counsel accomplished their goal of presenting the defense theory.

Nevertheless, even assuming arguendo deficient performance by defense counsel, Petitioner has not shown any resulting prejudice.  See EH at 471-82 (Dr. Borderlin's testimony).  In fact, the post conviction testimony of Dr. Borderlin was essentially the same as

the trial testimony of Dr. Floro.  And, Dr. Borderlin's testimony that, in his opinion, the victim had sex with Belcher within twenty-four hours of her death and that she had forced sex prior to being murdered would not have been helpful to the defense.  See EH Tr. at 481.  As such, Belcher has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided.  For these reasons, this ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice.  See Response at 73-79.

### J. Ground Ten

Petitioner claims that counsel were ineffective because they failed to request a curative instruction and failed to object, in the penalty phase, to the prosecutor's presentation of nonstatutory aggravating circumstances, such as the pleasantries of prison life and the expenses to house life-sentenced inmates.  Petition at 38-39; see Tr. at 1651-55, 1661, 1697-98, 1701, 1721, 1739-47, 1750-51.  Belcher raised this claim in his 3.851 motion, and the issue was addressed at the state court evidentiary hearing.  After the hearing, the trial court, citing applicable law for ineffectiveness, denied the 3.851 motion with respect to this claim, stating in pertinent part:

> In ground ten, Defendant alleges that counsel rendered ineffective assistance for

failing to object to non-statutory aggravating
circumstances in the form of testimony about
the nutritious food, diversions, risk of
escape and incurrence of additional taxpayer
legal expenses incurred in prison. Mr.
Chipperfield testified at the May 6, 2005,
evidentiary hearing regarding this claim. Mr.
Chipperfield testified that he did not object
to the State pointing out on cross-examination
of defense witnesses the things that prisoners
could do while they were in prison. (Exhibit
"B," pages 20-21.) Mr. Chipperfield testified
that he thought the State's questioning to be
silly and the jury would see through it as the
defense made it pretty obvious that prison was
not a good place and nobody wants to be there.
(Exhibit "B," page 21 .) Mr. Buzzell testified
that instead of objecting to the State asking
the defense witnesses about prison food,
inmates' ability to earn the right to work
outside of prison gates, drafting their own
legal pleading[s] and writing their own legal
documents, Mr. Chipperfield consistently
painted a picture of how unpleasant prison was
on direct and redirect examination. (Exhibit
"B," pages 44-45.) Mr. Buzzell testified that
he did not believe that the State's
questioning worked too well as the Court found
mitigation that Defendant had been a positive
role model and had helped younger prisoners
during his prior incarcerations. (Exhibit "B,"
page 45.)

The Court specifically finds Mr.
Chipperfield's and Mr. Buzzell's testimony was
both more credible and more persuasive than
Defendant's allegations. Laramore v. State,
699 So.2d 846 (Fla. 4th DCA 1997). The Court
finds that defense counsel adequately dealt
with the State's cross-examination of
prisoners in the penalty phase regarding life
in prison. Defense counsel thought that the
State's points were foolish and that they
could adequately demonstrate that life in
prison was unpleasant. The Court finds nothing
objectionable about the State's questions to
the prisoners called by Defendant as
mitigation witnesses in the penalty phase.

> Accordingly, Defendant has failed to establish
> error on the part of counsel or prejudice to
> his case. Strickland, 466 U.S. 668.

Resp. Ex. HH at 12-13.   Following an appeal by Petitioner, the

Supreme Court of Florida affirmed the trial court's denial of post

conviction relief with respect to this claim, stating:

> In this claim, Belcher takes issue with
> the cross-examination of defense mitigation
> witnesses, all inmates, who were asked by the
> prosecution about prison conditions in an
> attempt to show that prisoners can play
> sports, watch television, work outside prison
> walls, and participate in other diversions.
> Belcher argues that trial counsel was
> ineffective for failing to object to this line
> of questioning that "glamorized" the prison
> lifestyle, and that this testimony functioned
> as a series of nonstatutory aggravating
> circumstances.
>
> When asked about his failure to object at
> the evidentiary hearing below, Chipperfield
> testified that he did not object to the
> prosecutor's questions because he thought the
> line of questioning was "silly" and that the
> jury would see through it.[33] He also stated
> that he felt he was able to get these same
> witnesses to describe for the jury that prison
> was "not a good place."[34] Buzzell testified
> that he felt Chipperfield did a thorough job
> on redirect of attacking this line of
> questioning, and that he was able to get the
> inmates to describe how "unpleasant" prison
> life really was.[35] Also, given Judge
> Dearing's sentencing order, which cited as
> mitigation Belcher's behavior in prison and
> the testimony of the inmates who stated that

---

[33] See EH Tr. at 559.

[34] See EH Tr. at 559.

[35] See EH Tr. at 583.

> he served as a role model, Buzzell felt that
> presenting the inmate testimony was ultimately
> worthwhile.
>
> As with the previous claims, we agree
> with the trial court's conclusion denying
> relief on this claim. The lower court found
> that defense counsel adequately dealt with the
> State's cross-examination of prisoners in the
> penalty phase regarding prison life, and that
> there was nothing objectionable about the
> State's cross-examination of these inmate
> witnesses. The court concluded that Belcher
> failed to establish error on the part of trial
> counsel or prejudice to his case. Belcher has
> demonstrated no error in these conclusions,
> and relief was properly denied.

Belcher, 961 So.2d at 251.

This ineffectiveness claim was rejected on the merits by the Supreme Court of Florida. Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Belcher is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is without merit. After the evidentiary hearing, the state court

resolved the credibility issue in favor of believing Buzzell and Chipperfield's testimony over Belcher's testimony.  Belcher, here, has not rebutted the trial court's credibility finding by clear and convincing evidence.   Given  the  trial  court's  credibility determination, Belcher's claim is wholly unsupported, and therefore fails.

Indeed, based on Chipperfield's and Buzzell's testimony at the evidentiary  hearing,  their  performance  was  not  deficient. Chipperfield chose to rebut rather than object to the prosecutor's line of questioning.  See Tr. at 1657-59, 1662, 1710-11, 1748-50. Buzzell explained Chipperfield's strategy:

> I  think  that's  exactly  what  Mr.
> Chipperfield  did  was  clarify  that  on  his
> redirect  examination  of  those  witnesses.   I
> think he consistently painted a picture of how
> unpleasant  prison  really  was.   Mr.  de  la
> Rionda advocating for the other side tried to
> paint a different picture, but frankly I don't
> think that it worked too well.
>
> If I recall Judge Dearing's order[36] in
> this case he found that that was significant
> mitigation that we adduced that Mr. Belcher
> had been a positive role model and had helped
> a  lot  of  the  younger  prisoners  during  his
> prior  incarcerations,  so  I  think  overall  it
> was surely worth us presenting that testimony
> even if Mr. de la Rionda tried to do his best
> as  an  attorney  to  impugn  it.   At  least  the
> Court found it somewhat persuasive. . . .

EH Tr. at 583.

---

[36] See Resp. Ex. V, Sentencing Order, filed May 17, 2001, at 7-8.

Assuming arguendo deficient performance by defense counsel, Belcher has not shown any resulting prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided. For these reasons, this ineffectiveness claim is without merit since Belcher has neither shown deficient performance nor resulting prejudice. <u>See</u> Response at 80-85.

## K. Ground Eleven

As ground eleven, Petitioner claims that counsel were ineffective because they failed to call the following nonstatutory mitigation witnesses in the penalty phase: (1) Wanda Reddick, a family friend and the sister of Aretha Jones (Belcher's ex-girlfriend and the mother of his child); (2) Dedrick Baker, Belcher's stepson; (3) James Belcher, Sr., Belcher's father; (4) Bernice Johnson, Belcher's aunt; (5) Harriet Jarrett, Belcher's aunt; and (6) Helen Deas, another aunt. Petition at 41-47; Memorandum of Law at 19-20. As acknowledged by the parties, Belcher raised this claim in his 3.851 motion, and the issue was addressed at the evidentiary hearing. Ultimately, the trial court denied the 3.851 motion with respect to this claim, stating:

> In ground eleven, Defendant claims
> ineffective assistance of counsel for failing
> to call Harriett Jarrett, Michael Deas, Helen
> Deas, Bernice Johnson, Wanda Reddick, Dedrick
> Baker, and James Belcher, Sr., as mitigation
> witnesses at the penalty phase of the trial.

Initially, the Court notes that at the conclusion of the evidentiary hearing held on May 6, 2005, Defendant abandoned his allegation that counsel failed to call Michael Deas as a mitigation witness. (Exhibit "B," page 55.) At the April 27, 2005, evidentiary hearing, Defendant presented the testimony of Wanda Reddick, Dedrick Baker, James Belcher, Sr., Bernice Johnson, Harriet Jarrett, and Helen Deas as mitigation witnesses counsel should have presented during Defendant's penalty phase. (Exhibit "A," pages 18-25, 26-35, 35-48, 49-54, 55-58, 59-68.)

Mr. Chipperfield and Mr. Buzzell testified at the May 6, 2005, evidentiary hearing regarding the instant claim. Mr. Chipperfield testified that based on his conversation with Aretha Jones, Dedrick Baker's mother, he determined that Mr. Baker would not be a good defense witness, but conceded that he did not have any notes indicating that he had spoke[n] to Mr. Baker. (Exhibit "B," page 22.) Mr. Chipperfield testified that his notes do not reflect that he ever discussed Wanda Reddick with Ms. Jones or that he was ever even aware of Ms. Reddick as her name is not anywhere in his file. (Exhibit "B," pages 22-23.) Mr. Chipperfield testified that he believes he spoke to Mr. Belcher, Sr., twice and based on those discussions he decided that Mr. Belcher, Sr., would not have been a good witness. (Exhibit "B," pages 23-24.) Mr. Chipperfield testified that he spoke to Harriet Jarrett and that it was apparent that she did not know about Defendant's involvement in crimes and things like that[.] (Exhibit "B," page 25.) Mr. Chipperfield testified that he spoke to Helen Deas and based on his conversation with her he wrote in his notes "not a good witness." Exhibit "B," page 26.) Finally, Mr. Chipperfield testified that he spoke to Bernice Johnson and he noted that she was "no help" which meant he decided not to call her as a defense witness. (Exhibit "B," page 26.)

68

Mr. Buzzell testified that Mr. Chipperfield handled most of contacting potential mitigation witnesses and deciding who to call. (Exhibit "B." page 46.) Mr. Buzzell testified that he recalled counsel talking to a number of Defendant's family members who lived in New York. (Exhibit "B," page 46.) Mr. Buzzell testified that some of the family members contacted were not called as defense witnesses because they had information about Defendant's background that would have been harmful to Defendant's case. (Exhibit "B," pages 48-49.) Finally, Mr. Buzzell testified that Defendant did not want some of his family to be intimately involved in his case. (Exhibit "B," page 49.)

The Court specifically finds Mr. Chipperfield's and Mr. Buzzell's testimony was both more credible and more persuasive than Defendant's allegations. Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997). The Court accepts Mr. Chipperfield's explanation as to why these individuals were not called as defense witnesses. The Court finds that their testimony would have been cumulative to the testimony actually presented during the penalty phase. See Brown v. State, 894 So.2d 137 (Fla. 2004); Gudinas v. State, 816 So.2d 1095, 1106 (Fla. 2002) (finding that trial counsel was not ineffective for failing to present evidence in mitigation that was cumulative to evidence already presented in mitigation). Further, the Court finds that defense counsel's estimation of these witnesses was accurate in regard to whether or not they provided any assistance to Defendant. See Hamilton v. State, 875 So.2d 586 (Fla. 2004). Accordingly, Defendant has failed to establish error on the part of counsel or prejudice to his case. Strickland, 466 U.S. 668.

Resp. Ex. HH at 13-15.  Following Belcher's appeal, the Supreme

Court of Florida affirmed the trial court's denial of post

69

conviction relief with respect to this claim, stating in pertinent
part:

> Belcher's final claim alleges that trial
> counsel was ineffective for failing to call
> six additional mitigation witnesses during his
> penalty phase. Belcher's postconviction
> counsel presented the testimony of six
> witnesses at the evidentiary hearing below in
> an effort to demonstrate what could have been
> offered during his penalty phase: Wanda
> Reddick, Dedrick Baker, James Belcher, Sr.,
> Bernice Johnson, Harriet Jarrett, and Helen
> Deas. Belcher claims that his attorneys did
> not investigate or evaluate these available
> witnesses from his extended family and
> therefore provided ineffective assistance that
> prejudiced his trial.
>
> We agree with the lower court that relief
> is not warranted on this claim. Chipperfield
> handled the penalty phase of the trial. The
> trial transcripts indicate that he presented
> eleven witnesses during this phase, including
> family members, prison workers, and fellow
> inmates. Belcher waived the right to testify
> at the penalty phase. At the evidentiary
> hearing, when asked about his failure to call
> the six witnesses, Chipperfield testified that
> he was not aware that Wanda Reddick existed,
> and that he did not have that name anywhere in
> his file. He stated that he spoke with Dedrick
> Baker's mother, and that his notes from this
> conversation indicate that Dedrick would not
> be a good mitigation witness.[37] Chipperfield
> then testified that he spoke with Belcher,
> Sr., Deas, and Jarrett prior to the penalty
> phase, but decided they would not be good
> witnesses; namely, they did not seem to have a
> very "realistic" view of Belcher and seemed
> largely unaware of his criminal history.[38]
> Chipperfield also testified that, according to

---

[37] See EH Tr. at 560.

[38] See EH Tr. at 561-64.

his notes, he spoke with Johnson but found she would be of no help.[39]   When Buzzell was asked about the failure to call these same witnesses, he testified that most of the names did not sound familiar; however, he specifically recalled Wanda Reddick and testified that he spoke with her and that he and Chipperfield together decided she would not be a good witness.[40] Of the other names he did remember, he only recalled that he and Chipperfield made joint decisions not to use the witnesses in mitigation; he also specifically recalled that Belcher did not want his family to be overly involved in the trial.[41]

In denying relief on this claim, the lower court found Chipperfield's explanations as to why the witnesses were not called to be credible. Furthermore, the court found that their testimony would have been cumulative to the mitigation testimony actually presented. The court also noted that defense counsel's estimation as to how helpful these witnesses could have been was accurate. Thus, the lower court concluded that Belcher did not establish deficient performance on the part of his trial counsel for failing to call these witnesses. Belcher has demonstrated no error in these conclusions, and we agree that he is entitled to no relief on this final claim of ineffective assistance of trial counsel.

Belcher, 961 So.2d at 251-52.

The Court reviews this ineffectiveness claim applying the deferential standard for federal court review of state court adjudications.  Upon review of the record and the applicable law,

---

[39] See EH Tr. at 564.

[40] See EH Tr. at 585.

[41] See EH Tr. at 587.

the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is without merit.  After the evidentiary hearing, the state court resolved the credibility issue in favor of finding Chipperfield and Buzzell's testimony both more credible and more persuasive than Belcher's.  Here, Belcher has not rebutted the trial court's credibility finding by clear and convincing evidence.

Indeed, based on both Chipperfield and Buzzell's testimony, their performance was not deficient.  See EH Tr. at 560-64 (Chipperfield's testimony regarding why he did not call the above-listed individuals as mitigation witnesses at the penalty phase); 584-87 (Buzzell's explanation as to why they did not call them as witnesses).  Specifically, Buzzell recalled that some of the witnesses were not called because they had information about Belcher's background that would have been "very harmful" in the penalty phase and also that Belcher did not want some of his family members "intimately involved" in the proceedings.  Id. at 586-87.

72

At the penalty phase proceeding, in which the defense called eleven witnesses (including family members, prison workers, and fellow inmates), it was evident that some of the family members were not even aware of Belcher's criminal past.  Tr. at 1596-98, 1619.

Additionally, even assuming arguendo deficient performance, Petitioner has not shown any resulting prejudice. Belcher's family history was presented at the penalty phase through his mother, sister, and aunts.  Further, Belcher's status as a good role model, father figure and peacemaker was presented at the penalty phase through inmate testimony.  And, finally, Belcher's father's testimony was presented through his letter at the <u>Spencer</u> hearing. EH Tr. at 562; Record at 608, Letter by Belcher, Sr.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided. Thus, this ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice. <u>See</u> Response at 86-93.

### **L. Ground Fourteen**[42]

Belcher asserts that the previously-described instances of ineffectiveness cumulatively denied him effective assistance of counsel.  Petition at 49; Memorandum of Law at 21.  The parties

---

[42] Belcher withdrew grounds twelve and thirteen.  <u>See</u> Petition at 49; Memorandum of Law at 21.

agree that he raised this claim in his 3.851 motion.  Applying the
Strickland ineffectiveness test, the trial court denied the 3.851
motion with respect to this issue, finding that "there is no
cumulative effect and the instant claim is without merit."  Resp.
Ex. HH at 18.  Following Petitioner's appeal, the Supreme Court of
Florida affirmed the trial court's denial of post conviction relief
with respect to this claim, stating in pertinent part:

> Since we find no merit in the individual
> ineffective assistance of counsel arguments
> Belcher makes to this Court on appeal, we
> affirm the lower court's decision to deny
> relief on this claim.  See Suggs v. State, 923
> So.2d 419, 441 (Fla. 2005) ("[A] claim of
> cumulative error will not be successful if a
> petitioner fails to prove any of the
> individual errors he alleges.") (citing Bryan
> v. State, 748 So.2d 1003, 1008 (Fla.1999)).

Belcher, 961 So.2d at 252.

As required by AEDPA, this claim will be addressed applying
the deferential standard for federal court review of state court
adjudications.  Having completed a thorough review of the record
and the controlling law, the Court concludes that the state court's
adjudication of this claim was not contrary to clearly established
federal law, did not involve an unreasonable application of clearly
established federal law, and was not based on an unreasonable
determination of the facts in light of the evidence presented in
the state court proceedings.  Therefore, Belcher is not entitled to
relief on the basis of this claim.

Moreover, even assuming the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit.

> As set forth above, [Petitioner] has not demonstrated error by trial counsel; thus, by definition, [Petitioner] has not demonstrated that cumulative error of counsel deprived him of a fair trial. See Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner "has presented nothing to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied, 531 U.S. 849 (2000).   Belcher is not entitled to relief on the basis of this cumulative error claim.

## M. Ground Fifteen

As ground fifteen, Belcher contends that appellate counsel was ineffective for failing to raise, on direct appeal, the following issues: (a) the trial court's denial of a motion for judgment of acquittal based on the circumstantial evidence rule enunciated in Smolka v. State,[43] and (b) the trial court's denial of Belcher's request for a special jury instruction on the circumstantial evidence rule. Petition at 51-53; Memorandum of Law at 22.   Belcher raised these ineffectiveness claims in a petition for writ of

---

[43] See Smolka v. State, 662 So.2d 1255, 1267 (Fla. 5th DCA 1995) (stating that a conviction based wholly on circumstantial evidence cannot stand unless the circumstantial evidence is both consistent with the defendant's guilt and inconsistent with any reasonable hypotheses of innocence), rev. denied, 668 So.2d 603 (Fla. 1996).

habeas corpus.   Resp. Ex. LL.   Recognizing <u>Strickland</u> as the controlling law for ineffectiveness claims, the Supreme Court of Florida denied the petition with respect to these claims, stating in pertinent part:

> Belcher next asserts that his appellate counsel was ineffective for failing to argue on direct appeal the trial court's denial of his motion for judgment of acquittal as to both the sexual battery count and the first-degree murder count. At the close of the State's case in the guilt phase, defense counsel argued for a judgment of acquittal on both counts.[44] Defense counsel argued that a reasonable hypothesis of innocence could be that Belcher had consensual sex with the victim six days prior to the autopsy date, depositing semen in her that dripped onto her slipper; defense counsel also reasoned that perhaps Belcher did not initially admit to knowing the victim because almost three years had passed between this consensual meeting and the police investigation. Defense counsel further contended that the vaginal injuries could have been the result of rough consensual sex. In denying both motions, the trial court found that the State introduced evidence sufficient to satisfy each of the elements of the two charged offenses; the trial judge also stated that, although circumstantial, the evidence was consistent with the State's theory of guilt and inconsistent with any reasonable hypothesis of innocence that did not venture into the realm of pure speculation.[45]
>
> In affirming Belcher's death sentence on direct appeal, this Court found that there was "sufficient competent and substantial evidence presented to support the conviction for first-

----

[44] <u>See</u> Tr. at 1230-38.

[45] <u>See</u> Tr. at 1240-41.

degree murder." <u>Belcher</u>, 851 So.2d at 682. Among other evidence cited, we noted the eyewitness testimony connecting Belcher and Embry and the incriminating physical evidence linking him both to her and her home. This Court also affirmed Belcher's conviction for sexual battery on direct appeal. <u>Id</u>. at 679. Given that this Court found the evidence sufficient to support the first-degree murder charge, the sexual battery charge, and Belcher's death sentence, appellate counsel would not have been successful in raising the denial of the judgment of acquittal on direct appeal. Accordingly, failure to argue this claim does not render appellate counsel ineffective. <u>See</u> <u>Rutherford</u>, 774 So.2d at 643.[46]

Belcher also argues that appellate counsel was ineffective for failing to raise the trial court's denial of his request for a special jury instruction on the circumstantial evidence rule. In denying this request, the trial judge recognized that he had the discretion to give the instruction but stated that he did not believe the facts of the case required it and that the standard jury instructions covered the issue of circumstantial evidence.[47] Had appellate counsel raised this issue on direct appeal, it would have been reviewed under an abuse of discretion standard. <u>Parker v. State</u>, 873 So.2d 270, 294 (Fla. 2004) ("Although the trial court can give the circumstantial evidence instruction, we have 'expressly approved courts which have exercised their discretion and not given the instruction.'") (quoting <u>Monlyn v. State</u>, 705 So.2d 1, 5 (Fla. 1997)). Since the trial judge in this case

---

[46] <u>See</u> <u>Rutherford v. Moore</u>, 774 So.2d 637, 643 (Fla. 2000) (stating that if the legal issue would in all probability have been found to be without merit if counsel had raised the issue on direct appeal, then counsel's failure to raise the meritless issue will not render his performance ineffective).

[47] <u>See</u> Tr. at 1287-88.

heard arguments both from defense counsel and from the State regarding defense counsel's request for this instruction,[48] and in his discretion decided it was not necessary, this Court most likely would not have reversed that ruling on direct appeal. Thus, appellate counsel cannot be deemed ineffective for failing to raise it, and relief is denied. <u>See Rutherford</u>, 774 So.2d at 643.

<u>Belcher</u>, 961 So.2d at 254-55.

As required by AEDPA, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Upon a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Belcher is not entitled to relief on the basis of these claims.

Additionally, even assuming the state court's adjudication of these claims is not entitled to deference under AEDPA, Petitioner's claims are without merit. Appellate counsel's performance was not deficient. And, even assuming arguendo deficient performance by appellate counsel, there is no resulting prejudice. The omitted claims would not have had "'a reasonable probability of success on

---

[48] <u>See</u> Tr. at 1285-87.

appeal.'"[49]   Philmore v. McNeil, 575 F.3d 1251, 1265 (11th Cir. 2009) (quoting Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991)), cert. denied, 130 S.Ct. 1884 (2010).   Thus, these ineffectiveness claims are without merit since Petitioner has neither shown deficient performance nor resulting prejudice.   See Response at 98-105.

## N. Ground Sixteen

As ground sixteen, Petitioner contends that appellate counsel was ineffective for failing to raise, on direct appeal, the following issue:  the trial court's denial of the defense's motion for mistrial based on the prosecutor's comments regarding Belcher's exercising his right to remain silent.  Petition at 55; Memorandum of Law at 23-24.  Petitioner raised this ineffectiveness claim in a petition for writ of habeas corpus, see Resp. Ex. LL, and the Supreme Court of Florida denied that petition, stating in pertinent part:

> Belcher takes issue with the following remarks from the State's closing argument in the guilt phase:
>
> By killing his victim the defendant made sure that she could not come into this courtroom and identify him as being the person who raped her .... [defense counsel] has gotten up

---

[49] In denying the petition for writ of habeas corpus, the Supreme Court of Florida concluded that appellate counsel would not have been successful in raising ground 15(a) on direct appeal and that ground 15(b) "most likely" would not have been successful on direct appeal.  Belcher, 961 So.2d at 255.

> here and told you now ... hey, it
> was consensual. You know it was some
> other time. Just a coincidence.
>
> What evidence have you heard
> that it was consensual? What
> evidence have you heard that it was
> consensual? All the evidence
> indicates quite to the contrary.
>
> . . . .
>
> What consent are we talking
> about? *What evidence did you hear
> come out of that witness stand
> saying that she consented to
> this?*[50]

Defense counsel objected and moved for a
mistrial.[51] The trial court overruled the
objection and denied the motion for a mistrial
after the sidebar conference, stating that
there had been witnesses (Dr. Floro) who
testified about whether or not the sex was
consensual.[52] Belcher now claims ineffective
assistance of appellate counsel for not
pursuing this claim on direct appeal.

Had appellate counsel raised this claim
on direct appeal, the comment would have been
reviewed under the harmless error standard,
and the motion for a mistrial based upon these
comments would have been reviewed for an abuse
of discretion. See Rodriguez v. State, 753
So.2d 29, 39 (Fla. 2000) ("[I]t is well
settled that such erroneous comments [on a
defendant's right to remain silent] do not
require an automatic reversal. . . . [W]e find
that the trial court did not abuse its
discretion in denying the motion for
mistr[i]al as to the first comment. Similarly,

---

50 Tr. at 1320-21.

51 See Tr. at 1321.

52 See Tr. at 1322.

80

we find that the second comment, the objection to which the trial court overruled, was harmless beyond a reasonable doubt.") (citations omitted).

First, we conclude the challenged remarks do not constitute an impermissible comment on Belcher's right to remain silent. As we explained in Caballero v. State, 851 So.2d 655, 660 (Fla. 2003), "it is permissible for the State to emphasize uncontradicted evidence for the narrow purpose of rebutting a defense argument since the defense has invited the response." Since the theory in the instant case theorized that Belcher and the victim had "rough consensual sex" prior to the murder, but that Belcher was not the person who killed and raped Ms. Embry, the trial judge correctly concluded that the State was merely commenting on the lack of evidence supporting the defense theory that the two engaged in consensual relations.

Regardless, the comment would have had to constitute reversible error for this Court to find merit in the argument on direct appeal and reverse. Id. ("Erroneous comments require reversal only where there is a reasonable possibility that the error affected the verdict.") (citing Rodriquez, 753 So.2d at 39). Given that this Court found "competent and substantial evidence" supporting Belcher's conviction and death sentence, Belcher, 851 So.2d at 682, it is highly unlikely that this Court would have reversed based on this one remark from the prosecutor's closing argument.FN9 In addition, regarding Belcher's motion for a mistrial based upon these comments, it is doubtful that this Court would have found that the trial court abused its discretion in denying the motion, given that the judge heard from both parties at a sidebar conference before ruling. Since Belcher has not demonstrated these claims would have merit on direct appeal, appellate counsel cannot be deemed ineffective for failing to pursue them, and Belcher is not entitled to relief. See Rutherford, 774 So.2d at 643.

FN9. In addition, appellate counsel did challenge another remark from the State's closing argument on direct appeal, arguing that it improperly suggested that Belcher had killed the victim to eliminate her as a witness. <u>Belcher</u>, 851 So.2d at 682. This Court concluded: "[a]lthough the prosecutor arguably crossed the line into discussion of matters that could also support the avoid arrest aggravator ..., we find that any resulting error was harmless." <u>Id</u>. at 682-83. As this Court held in <u>Davis v. State</u>, 928 So.2d 1089, 1126-27 (Fla. 2005) (citing <u>Atkins v. Dugger</u>, 541 So.2d 1165, 1167 (Fla. 1989)), "appellate counsel is not required to present every conceivable claim." Since appellate counsel did challenge one of the prosecutor's comments on direct appeal, it does not appear that counsel failed to review those comments for appellate purposes.

<u>Belcher</u>, 961 So.2d at 255-56.

Applying AEDPA's deferential standard for federal court review of state court adjudications and upon review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Belcher is not entitled to relief on the basis of this claim.

Moreover, even assuming the state court's adjudication is not entitled to deference, Petitioner's claim is without merit. Counsel's failure to pursue this issue on appeal was not deficient performance.   Additionally, even assuming arguendo deficient performance by appellate counsel, there is no resulting prejudice. Within a reasonable probability, the omitted claim would not have been successful on appeal.[53] Thus, the ineffectiveness claim is without merit since Petitioner has neither shown deficient performance nor resulting prejudice.   <u>See</u> Response at 106-11.

### O. Ground Seventeen

Belcher claims that appellate counsel was ineffective for failing to pursue, on direct appeal, the issue of victim impact arguments.   Petition at 57-61; Memorandum of Law at 24-25; Reply at 8-9.   Petitioner raised this ineffectiveness claim in a petition for writ of habeas corpus.   In denying that petition with respect to this issue, the Supreme Court of Florida stated in pertinent part:

> In his final claim for relief, Belcher asserts that appellate counsel was ineffective for failing to pursue the issue of victim impact arguments on direct appeal. Prior to the start of the penalty phase, defense counsel brought four separate motions to exclude victim impact evidence, all of which were denied. At the close of the presentation

---

[53] The Supreme Court of Florida, in denying the petition for writ of habeas corpus, concluded that this omitted claim would not have been successful on direct appeal. <u>Belcher</u>, 961 So.2d at 256.

83

of all penalty phase evidence, defense counsel again raised an objection which was overruled. Belcher claims that the State made the victim impact evidence the main feature of its penalty phase closing arguments, reiterating the testimony of those who testified during the penalty phase. Belcher argues that the victim impact evidence and the State's closing argument reduced the penalty phase portion of the trial to a simple exercise in weighing the comparative worth of his life versus the victim's. Thus, Belcher argues that appellate counsel was ineffective for failing to raise this issue on direct appeal.

On direct appeal, the trial judge's decision to admit this evidence would have been reviewed for an abuse of discretion. See Schoenwetter v. State, 931 So.2d 857, 869 (Fla.) ("The standard applicable to a trial court's ruling on the admission of evidence is whether there has been an abuse of discretion."), cert. denied, 549 U.S. 1035, 127 S.Ct. 587, 166 L.Ed.2d 437 (2006). The trial transcripts indicate that the State called four witnesses during the penalty phase: Wanda White, the victim of Belcher's prior violent felony; Martin Embry, the victim's father; Carol Thomas, the victim's best friend; and Ricky Embry, the victim's brother. Thus, the State presented four victim impact witnesses[54] overall, with one being called specifically to introduce evidence regarding Belcher's prior violent felony, which is permissible pursuant to the governing statute.FN10 Under our case law we

---

[54] The State presented only three victim impact witnesses: Martin Embry, Sr., the victim's father, Tr. at 1545-47; Carol Thomas, the victim's best friend, id. at 1548-49; and Ricky Embry, the victim's brother, id. at 1550-53. Wanda White was not a victim impact witness, but rather was the victim in Belcher's 1989 conviction that was used by the State to establish the prior violent felony aggravator. Ms. White testified as to the details of those crimes, not the impact of the victim's death on her or on the community. She did not know the victim, and therefore could not have been a victim impact witness.

conclude this was a proper presentation of
victim impact evidence. <u>See</u> <u>Schoenwetter</u>, 931
So.2d at 870 (finding no abuse of discretion
in allowing three witnesses to offer victim
impact testimony); <u>Kormondy v. State</u>, 845
So.2d 41, 53-54 (Fla. 2003) (finding no abuse
of discretion in allowing three witnesses to
offer victim impact testimony). Given that
this argument would not have been successful
on direct appeal, relief is properly denied as
an ineffective assistance of appellate counsel
claim. <u>See</u> <u>Rutherford</u>, 774 So.2d at 643.

> FN10. Section 921.141(7), Florida
> Statutes, (2006) allows for the
> introduction of victim impact
> evidence. It provides as follows:
>
> Once the prosecution has provided
> evidence of the existence of one or
> more aggravating circumstances as
> described in subsection (5), the
> prosecution may introduce, and
> subsequently argue, victim impact
> evidence to the jury. Such evidence
> shall be designed to demonstrate the
> victim's uniqueness as an individual
> human being and the resultant loss
> to the community's members by the
> victim's death. Characterizations
> and opinions about the crime, the
> defendant, and the appropriate
> sentence shall not be permitted as a
> part of victim impact evidence.

<u>Belcher</u>, 961 So.2d at 256-57.

This ineffectiveness claim was rejected on the merits by the
Supreme Court of Florida.  Since there is a qualifying state court
decision, this claim will be addressed applying the deferential
standard for federal court review of state court adjudications.
After an extensive review of the record and the applicable law, the
Court concludes that the state court's adjudication of this claim

was not contrary to clearly established federal law,[55] did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Therefore, Petitioner is not entitled to relief on the basis of this claim.

Additionally, even assuming the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit.   Counsel's failure to raise this issue on direct appeal was not deficient performance.   And, if it was, there is no resulting prejudice.   Within a reasonable probability, the omitted claim would not have been successful on appeal.[56]   Thus, the

---

[55] See Payne v. Tennessee, 501 U.S. 808, 823, 825, 827 (1991) (overruling Booth v. Maryland, 482 U.S. 496 (1987), which barred the admission of victim impact evidence during the penalty phase of a capital trial; finding that, where state law permitted its admission, the Eighth Amendment to the United States Constitution does not prevent the prosecution from presenting evidence about the victim, evidence of the impact of the murder on the victim's family, and prosecutorial argument on these subjects; finding no merit to the concern raised in Booth that admission of victim impact evidence "permits a jury to find that defendants whose victims were assets to their communities are more deserving of punishment than those whose victims are perceived to be less worthy.   Such evidence is not generally offered to encourage comparative judgments of this kind, but is designed to show instead each victim's uniqueness as an individual human being[;]" and noting that "the Booth Court was wrong in stating that this kind of evidence leads to the arbitrary imposition of the death penalty.").

[56] In denying the petition for writ of habeas corpus, the Supreme Court of Florida stated that this omitted claim would not have been successful on direct appeal.   Belcher, 961 So.2d at 257.

ineffectiveness claim is without merit since Belcher has neither shown deficient performance nor resulting prejudice. See Response at 112-16; Schoenwetter v. State, 931 So.2d 857, 870 n.6 (Fla. 2006) (citing Fla. Stat. § 921.141(7) (2000), which permits victim impact evidence "designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death"), cert. denied, 549 U.S. 1035 (2006).

### P. Ground Eighteen

Recognizing that Florida Statutes section 921.141(5) limits the circumstances a prosecutor seeking the death penalty can rely upon to disclosed and specific aggravating circumstances, Belcher contends that the prosecutor "surprised the defense with a last-moment jury argument that the Petitioner killed Jennifer Embry to avoid arrest[,] i.e., to eliminate her as a witness." Memorandum of Law at 26.  Specifically, Belcher asserts that the prosecutor, during the penalty phase closing argument, stated that Belcher had killed to eliminate Embry as a witness.  Petition at 63-64; Memorandum of Law at 25-26.  Thus, Petitioner concludes that he was denied the opportunity to anticipate and rebut the "avoid arrest" aggravating circumstance.  Id.

Petitioner raised this issue on direct appeal.  Resp. Ex. W, Initial Brief of Appellant at 21-30.  Respondent's contention that the issue is solely a question of state law, see Response at 120-

22, is unconvincing.  Assuming that Petitioner has raised the same claim here that he raised on direct appeal in Supreme Court of Florida, Petitioner has sufficiently raised an issue of federal constitutional dimension.

The Supreme Court of Florida, in affirming Petitioner's convictions and death sentence, addressed this issue on the merits, stating in pertinent part:

> Belcher claims that the trial court erred in denying his motion for a mistrial, which was made upon objection to the prosecutor's penalty phase closing argument, contemporaneous with the prosecutor's statements that the defendant's actions were to eliminate Embry as a witness.FN4  Belcher states that because the State was not pursuing the avoid arrest aggravator, and because the evidence did not support that aggravator, the prosecutor's argument of an improper aggravating circumstance tainted the penalty phase and caused the death sentence to be unconstitutionally imposed.
>
>> FN4. The argument and objection during closing was as follows in pertinent part:
>>
>> [Prosecutor:] Don't those violent crimes show his true character? Doesn't it show that he is a person who refuses to learn from prior experience? You might restate that. You might say he actually learned from one of those experiences. What did he learn regarding Ms.White? She was able to identify him. Ms. Embry wasn't able to come into this court and identify him.
>>
>> [Defense:] Your honor, I think that is objectionable. It's a thinly veiled argument about elimination of

88

a witness. Elimination of a witness is not an aggravator that the State has proved, nor can they do it, but that is what the argument is all about. It's not an argument about anything but that. Has nothing to do with any of the aggravators.

[Prosecutor:] With all due respect, I'm not arguing that as an aggravator. That's not one of the enumerated ones. I haven't said anything about the elimination of a witness. I'm talking about the prior violent crime, which I'm allowed to do that. That is a prior aggravator.

. . . .

[Prosecutor:] What does this aggravator prove? That the defendant is willing to kill to cover his tracks. That he chose to kill, in addition to committing a dangerous violent felony, sexual battery.

[Defense:] Your Honor, excuse me. I renew the objection. I have to renew the objection I just made at the bench.

We agree with the trial court's denial of a mistrial in this situation because although the prosecutor arguably crossed the line into discussion of matters that could also support the avoid arrest aggravator, which was not a relevant aggravator to this case, we find that any resulting error was harmless. The prosecutor's comments did not constitute a wholly improper and prejudicial attempt to introduce the avoid arrest aggravator into this case. As the State points out, the jury was not subsequently instructed on the avoid arrest aggravator. Before instructing the jury on the aggravators of prior violent felony, murder in the course of a sexual battery, and HAC, the trial court instructed the jury that it was limited to consideration of only those

three aggravators. In accordance with the standard jury instruction, the trial court stated: "The aggravating circumstances that you may consider are limited to any of the following that are established by the evidence. . . ." Fla. Std. Jury Instr. (Crim.) 7.11. Thus, we find that the prosecutor's argument, because it was made within the context of this case regarding the prior violent felony aggravator, did not rise to the level that would require the trial court to declare a mistrial and order a new trial. See Teffeteller v. State, 439 So.2d 840, 845 (Fla. 1983) ("Comments of counsel during the course of a trial are controllable in the discretion of the trial court, and an appellate court will not overturn the exercise of such discretion unless a clear abuse has been made to appear.").

Belcher, 851 So.2d at 682-83.

This claim was rejected on the merits by the Supreme Court of Florida. Thus, since there is a qualifying state court decision, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. After thoroughly reviewing the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on the basis of this claim.

Additionally, even assuming the state court's adjudication of this claim is not entitled to deference, Petitioner's claim is without merit.  The prosecutor, during the penalty phase closing argument, was presenting and discussing the three aggravators that the State had sought and was not attempting to present the avoid arrest aggravator.  The prosecutor's argument, which was made within the context of his discussion regarding the prior violent felony aggravator, did not rise to the level of a constitutional violation.  Viewed in context, the prosecutor's comments did not deny Petitioner a fair trial.

### Q. Ground Nineteen

Belcher argues that, based on <u>Apprendi</u> and <u>Ring</u>,[57] Florida's death-sentencing scheme is unconstitutional because it does not require that aggravating circumstances be charged in the Indictment, does not require specific, unanimous jury findings of aggravating circumstances and does not require a unanimous verdict for the jury to return a recommendation of death.  Petition at 65; Memorandum of Law at 26; Reply at 9.  First, Belcher raised this

---

[57] In <u>Apprendi</u>, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  <u>Apprendi</u>, 530 U.S. at 490.  Subsequently, on June 24, 2002, in <u>Ring</u>, the Court expanded its ruling in <u>Apprendi</u> to the context of capital punishment and held that aggravating factors that justify an increase in the maximum punishment for first degree murder from life imprisonment to death become elements of a greater offense and must be found to exist beyond a reasonable doubt by a jury.  <u>Ring</u>, 536 U.S. at 609.

claim on direct appeal.   Resp. Exs. W at 43-49 (addressing

Apprendi); Y at 1-5 (discussing Ring).   In affirming Belcher's

convictions and death sentence, the Supreme Court of Florida stated

in pertinent part:

> Belcher challenges the trial court's denial of the defendant's motion to declare sections 782.04 and 921.141, Florida Statutes (2002), unconstitutional under the Sixth and Fourteenth Amendments and the U.S. Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Belcher claims that his death sentence should be vacated because (1) the indictment did not give notice of the aggravating circumstances on which the State would rely to attempt to establish eligibility for the death penalty; (2) the jury in this case was not told that the existence of any aggravating circumstance had to be agreed upon by all jurors; and (3) the jury's nonbinding recommendation was not unanimous. However, as the State points out, two of the three aggravators found in this case are exempted from an Apprendi analysis: prior violent felony and murder committed in the course of a sexual battery. Regarding the prior violent felony aggravator, in Apprendi, the U.S. Supreme Court exempted prior convictions from facts that must be submitted to a jury because they increase the penalty for a crime. Id. at 490, 120 S.Ct. 2348. The recent decision of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), did not disturb that particular holding. See id. at 597 n. 4, 122 S.Ct. 2428 (noting that Ring did not challenge Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and that none of the aggravators in his case related to past convictions). Regarding the murder being committed in the course of a sexual battery aggravator, the fact remains that a unanimous jury found Belcher guilty of both murder and sexual battery, and therefore the guilt phase verdicts reflect that the jury

independently found the aggravator of the murder being committed in the course of a sexual battery.

As for Belcher's challenge to Florida's death penalty scheme and how it relates to the remaining aggravator of HAC, we find that Belcher is not entitled to relief under the holding of <u>Ring</u>. This Court addressed a similar contention in <u>Bottoson v. Moore</u>, 833 So.2d 693 (Fla.), <u>cert</u>. <u>denied</u>, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and <u>King v. Moore</u>, 831 So.2d 143 (Fla.), <u>cert</u>. <u>denied</u>, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), and denied relief. We find that Belcher is likewise not entitled to relief on this claim.

<u>Belcher</u>, 851 So.2d 685-86.  Thereafter, Belcher filed a petition for writ of certiorari in the Supreme Court of the United States, raising the issue of whether <u>Ring</u> is applicable to Florida's death penalty sentencing scheme, <u>see</u> Resp. Ex. AA, and the State filed a brief in opposition, <u>see</u> Resp. Ex. BB.  The Supreme Court of the United States denied certiorari on December 1, 2003.  <u>Belcher</u>, 540 U.S. 1054; Resp. Ex. CC.

Next, Belcher raised the issue in his 3.851 motion in 2004. Resp. Ex. DD at 27-28.  The trial court denied the 3.851 motion with respect to this issue, stating in pertinent part:

Defendant claims that the holdings in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), <u>Schriro v. Summerlin</u>, 124 S.Ct. 2519 (2004), and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), that require aggravating circumstances be charged in the Indictment, found by the jury, and that the jury's death recommendation be unanimous apply to Defendant's death sentence. However, the Supreme Court of Florida has consistently rejected <u>Ring</u> claims. See e.g., <u>Marshall v.</u>

93

Crosby, 30 Fla. L. Weekly S399 (Fla. May 26, 2005); Robinson v. State, 865 So.2d 1259 (Fla. 2004); Smith v. State, 866 So.2d 51 (Fla. 2004); Parker v. State, 873 So.2d 270 (Fla. 2004); Guzman v. State, 868 So.2d 498 (Fla. 2003); Davis v. State, 875 So.2d 359 (Fla. 2003); Zakrzewski v. State, 866 So. 2d 688 (Fla. 2003); Henry v. State, 862 So.2d 679, 681 (Fla. 2003); Owen v. State, 862 So.2d 687, 704 (Fla. 2003); Johnston v. State, 863 So.2d 271, 286 (Fla. 2003), cert. denied, 541 U.S. 946, 124 S.Ct. 1676, 158 L.Ed.2d 372 (2004); Cummings-El v. State, 863 So.2d 246, 253 (Fla. 2003); Anderson v. State, 863 So.2d 169, 189 (Fla. 2003), cert. denied, 541 U.S. 940, 124 S.Ct. 1662, 158 L.Ed.2d 363 (2004): Jones v. State, 855 So.2d 611, 619 (Fla. 2003); Rivera v. State, 859 So.2d 495, 508 (Fla. 2003); Davis v. State, 859 So.2d 465, 480 (Fla. 2003); Stewart v. State, 872 So.2d 226 (Fla. 2003); Conde v. State, 860 So.2d 930, 959 (Fla. 2003), cert. denied, 541 U.S. 977, 124 S.Ct. 1885, 158 L.Ed.2d 475 (2004); McCoy v. State, 853 So.2d 396, 409 (Fla. 2003); Owen v. Crosby, 854 So.2d 182, 193 (Fla. 2003); Fennie v. State, 855 So.2d 597, 611 (Fla. 2003), cert. denied, 541 U.S. 975, 124 S.Ct. 1877, 158 L.Ed.2d 471 (2004); Caballero v. State, 851 So.2d 655, 664 (Fla. 2003); Nelson v. State, 850 So.2d 514, 533 (Fla. 2003), cert. denied, 540 U.S. 1091, 124 S.Ct. 961, 157 L.Ed.2d 797 (2003); Belcher v. State, 851 So.2d 678, 685 (Fla. July 10, 2003); Allen v. State, 854 So.2d 1255, 1262 (Fla. 2003); Wright v. State, 857 So.2d 861, 878 (Fla. 2003), 541 U.S. 961, 124 S.Ct. 1715, 158 L.Ed.2d 402 (2004); Blackwelder v. State, 851 So.2d 650, 653 (Fla. 2003); Duest v. State, 855 So.2d 33, 49 (Fla. 2003); Cooper v. State, 856 So.2d 969, 977 (Fla. 2003), cert. denied, 540 U.S. 1222, 124 S.Ct. 1512, 158 L.Ed.2d 159 (2004); Pace v. State, 854 So.2d 167, 172 (Fla. 2003), cert. denied, 540 U.S. 1153, 124 S.Ct. 1155, 157 L.Ed.2d 1049 (2004); Butler v. State, 842 So.2d 817, 834 (Fla. 2003); Harris v. State, 843 So.2d 856, 870 (Fla. 2003); Lawrence v. State, 846 So.2d 440, 456 (Fla. 2003); Banks v. State, 842 So.2d 788, 793

(Fla. 2003); <u>Grim v. State</u>, 841 So.2d 455, 465 (Fla. 2003); <u>Lugo v. State</u>, 845 So.2d 74, 119 (Fla. 2003); <u>Jones v. State</u>, 845 So.2d 55, 74 (Fla. 2003); <u>Kormondy v. State</u>, 845 So.2d 41, 54 (Fla. 2003); <u>Doorbal v. State</u>, 837 So.2d 940, 963 (Fla. 2003); <u>Anderson v. State</u>, 841 So.2d 390, 408 (Fla. 2003); <u>Cole v. State</u>, 841 So.2d 409, 431 (Fla. 2003); <u>Conahan v. State</u>, 844 So.2d 629, 642 (Fla. 2003): <u>Spencer v. State</u>, 842 So.2d 52, 72 (Fla. 2003); <u>Porter v. Crosby</u>, 840 So.2d 981, 987 (Fla. 2003): <u>Lynch v. State</u>, 841 So.2d 362, 366 (Fla. 2003); <u>Lucas v. State</u>, 841 So.2d 380, 389 (Fla. 2003): <u>Fotopoulos v. State</u>, 838 So.2d 1122, 1136 (Fla. 2002); <u>Israel v. State</u>, 837 So.2d 381, 394 (Fla. 2002): <u>Bruno v. Moore</u>, 838 So.2d 485, 492 (Fla. 2002); <u>Marquard v. State</u>, 850 So.2d 417, 431 (Fla. 2002); <u>Chavez v. State</u>, 832 So.2d 730, 767 (Fla. Nov. 21, 2002); <u>Washington v. State</u>, 835 So.2d 1083, 1091 (Fla. 2002); <u>Bottoson v. Moore</u>, 833 So.2d 693, 694 (Fla. 2002); <u>King v. Moore</u>, 831 So.2d 143, 144 (Fla. 2002). Further, the Supreme Court of Florida has rejected this claim under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), in <u>Brown v. Moore</u>, 800 So.2d 223 (Fla. 2001). <u>See</u> <u>State v. Lewis</u>, 838 So.2d 1102 (Fla. 2002); <u>Bottoson v. Moore</u>, 813 So. 2d 31 (Fla. 2002); <u>King v. State</u>, 808 So.2d 1237 (Fla. 2002). <u>See also</u> <u>Blackwelder v. State</u>, 851 So.2d 650, 654 (Fla. 2003) (rejecting claim that aggravating circumstances must be alleged in indictment); <u>Lynch v. State</u>, 841 So.2d 362, 378 (Fla. 2003) (rejecting claim that Florida's death penalty statute is unconstitutional because it does not require notice of aggravating circumstances); <u>Porter v. Crosby</u>, 840 So.2d 981, 986 (Fla. 2003) (rejecting argument that aggravating circumstances must be alleged in the indictment, submitted to the jury, and individually found by a unanimous jury verdict). Accordingly, the instant claim is without merit.

Resp. Ex. HH at 15-17.

Again, Petitioner raised the issue in his state petition for writ of habeas corpus.  Resp. Ex. LL at 3-9.  In denying that petition with respect to this issue, the Supreme Court of Florida stated in pertinent part:

> This Court denied Belcher's <u>Ring</u> challenge made as part of his direct appeal. <u>See</u> <u>Belcher</u>, 851 So.2d at 685 ("As for Belcher's challenge to Florida's death penalty scheme . . . we find that Belcher is not entitled to relief under the holding of <u>Ring</u>.").  Belcher is procedurally barred from relitigating this same argument in his habeas petition. <u>See</u> <u>Blackwood v. State</u>, 946 So.2d 960, 976-77 (Fla. 2006) (rejecting a <u>Ring/Apprendi</u> claim in Blackwood's habeas petition as procedurally barred since it was raised and rejected as part of his direct appeal).
>
> In addition, the trial court found both the "prior violent felony" aggravator and the "in commission of a violent felony" aggravator in issuing Belcher's death sentence.  This Court has denied relief pursuant to <u>Ring</u> in appeals where the trial judge has found these particular aggravators.  <u>See</u> <u>Robinson v. State</u>, 865 So.2d 1259, 1265 (Fla. 2004) ("This Court has held that the aggravators of murder committed 'during the course of a felony' and prior violent felony involve facts that were already submitted to a jury during trial and, hence, are in compliance with <u>Ring</u>."); <u>Owen v. Crosby</u>, 854 So.2d 182, 193 (Fla. 2003) (rejecting the defendant's <u>Apprendi</u> claim in light of <u>Ring</u> on the basis of <u>Bottoson v. Moore</u>, 833 So.2d 693 (Fla. 2002), noting that the "during the course of a felony" and the prior violent felony aggravators "involve[d] circumstances that were submitted to a jury and found to exist beyond a reasonable doubt").

Belcher, 961 So.2d at 252-53.   The Supreme Court of the United States denied certiorari on November 13, 2007.   Belcher, 552 U.S. 1026.

This claim was rejected on the merits by the state trial court and the Supreme Court of Florida.   Thus, the Court applies the deferential standard for federal court review of state court adjudications.   Following a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Belcher is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference, Petitioner's claim is without merit.   See Ring, 536 U.S. at 597 n.4 ("Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. No aggravating circumstance related to past convictions in his case; Ring therefore does not challenge Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which held that the fact of prior conviction may be found by the judge even if it increases the

97

statutory maximum sentence."); <u>Darling v. Sec'y</u>, No. 6:07-cv-1701-Orl-31GJK, 2010 WL 2471441, at *15-16 (M.D. Fla. June 7, 2010); <u>Duckett v. McDonough</u>, No. 5:07-cv-6-Oc-10GRJ, 2010 WL 1249840, at *46 (M.D. Fla. March 25, 2010) (rejecting petitioner's claim (that the aggravating circumstances necessary to render a death sentence are tantamount to elements of the crime which should not be decided by a simply majority jury vote) based on <u>Hildwin v. Florida</u>, 490 U.S. 638, 640-41 (1989)); <u>Miller v. State</u>, NO. SC08-287, 2010 WL 2195709, at *9 (Fla. June 3, 2010) ("[T]his Court has repeatedly held that where a death sentence is supported by the prior violent felony aggravating circumstance, Florida's capital sentencing scheme does not violate <u>Ring</u> or <u>Apprendi</u>."); <u>Peterson v. State</u>, 2 So.3d 146, 160 (Fla. 2009) ("This Court has found that '<u>Ring</u> did not alter the express exemption in <u>Apprendi</u> . . . that prior convictions are exempt from the Sixth Amendment requirements announced in the cases.'"), <u>cert</u>. <u>denied</u>, 130 S.Ct. 208 (2009); <u>see also</u> Response at 125-29.

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim[s] fail[]." <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420

(2009).  Petitioner's other claims are without merit.  Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the

99

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of September, 2010.

MARCIA MORALES HOWARD
United States District Judge

sc 9/27
c:
Counsel of Record